No. 57,563
and
No. 58,330

LLOYD LIGHTNER, Next of kin of Jessie Lightner, deceased, and heir at law, and in behalf of himself and in behalf of all of the other heirs at law; *et al., Appellants,* v. FLOYD FRANK, LINDEN LITWILLER, and THE BOARD OF COUNTY COMMISSIONERS OF HASKELL COUNTY, KANSAS, *Appellees.*

LLOYD LIGHTNER, next of kin of Dale Lightner, deceased, and heir at law, and in behalf of himself and in behalf of all of the other heirs at law; *et al., Appellants,* v. FLOYD FRANK, LINDEN LITWILLER, and THE BOARD OF COUNTY COMMISSIONERS OF HASKELL COUNTY, KANSAS, *Appellees.*

(727 P.2d 430)

Opinion filed October 31, 1986.

*Lelyn J. Braun,* of Lelyn J. Braun, Chartered, of Garden City, argued the cause and was on the briefs for the appellants.

*Ken Strobel,* of Williams, Larson, Strobel, Estes & Malone, P.A., argued the

cause, and *B. G. Larson* and *Terry J. Malone*, of the same firm, were on the briefs for the appellees.

The opinion of the court was delivered by

PRAGER, J.: This case involves consolidated appeals in two district court cases filed by the children of a farm couple seeking to recover damages for their wrongful deaths. The case arose out of an automobile collision which occurred at the intersection of two county roads in Haskell County, Kansas, on September 25, 1980. At the time of the collision, Jessie Lightner was driving a pickup truck used in farming operations. It collided with a truck driven by the defendant, Linden Litwiller, and owned by defendant Floyd Frank, his employer. As a result of the collision, Dale and Jessie Lightner were killed.

Dale Lightner was the president and majority stockholder, and Jessie Lightner was the secretary and a minority stockholder, in a farming corporation known as D. Lightner Farms, Inc. The Lightners, together with seven of their eight children, were engaged in extensive farming operations in Finney and Haskell Counties. The farm corporation had leased some land in Gray County which is referred to in the record as the Batman land. On the day of the accident, Dale and Jessie Lightner drove after lunch to the location of the Batman land to check the condition of the crop. From there they were to go to another tract of land near their homestead to pick up a farm tractor and then return home. The collision occurred between the Batman land and the place where the farm tractor was located. It was undisputed that Jessie Lightner was driving the vehicle and Dale Lightner was the passenger. The accident occurred at an intersection where the view was partially obscured by growing corn, and apparently neither of the drivers saw the other vehicle.

Two actions for wrongful death were brought by the plaintiffs, as the children and heirs of their parents, to recover damages. The primary issue of fact presented at the jury trial was the percentage of causal fault to be allocated as between Jessie Lightner, driver of the corporation's truck, and Linden Litwiller, driver of the other truck. From the evidence presented at the trial, the jury allocated the causal negligence for the accident 50% to Linden Litwiller, 50% to Jessie Lightner, and 0% to Dale Lightner.

Over the objection of the plaintiffs, the jury was submitted an instruction and verdict form requiring the jury to determine

whether or not Dale and Jessie Lightner were engaged in a joint enterprise at the time of the collision. The jury found that they were engaged in a joint enterprise. As a result of that finding, the district court held that the 50% negligence of Jessie Lightner was to be imputed to Dale Lightner, and as a result the plaintiffs, as his next of kin, were barred from recovery for his wrongful death.

After motions for new trial were denied, the Lightner heirs took an appeal to the appellate courts. That appeal is Case No. 57,563 in which the basic issue is whether any negligence of Jessie Lightner in driving the pickup truck is to be imputed to Dale Lightner, the passenger, on the basis of joint enterprise.

While this appeal was pending, the defendant, Linden Litwiller, sent a letter to the plaintiffs' attorney stating that he had lied at the trial and now admitted that he had been driving 60 to 70 miles per hour rather than 25 to 30 miles per hour as he had testified. The plaintiffs filed a motion for a new trial on the basis of newly discovered evidence and also moved the Court of Appeals to remand the case back to the district court for hearing on that motion.

The district court held a hearing on the motion for a new trial and denied the motion on the basis that it had no jurisdiction, because the first appeal was then pending before the Court of Appeals. The plaintiffs then filed an appeal from the order denying plaintiffs' motion for a new trial based on newly discovered evidence. That appeal is Case No. 58,330.

The two appeals were consolidated and heard by the Court of Appeals. In Case No. 57,563, the Court of Appeals affirmed the judgment based upon the jury verdict in an unpublished opinion filed April 3, 1986, on the basis of Supreme Court Rule 7.042(c) (235 Kan. lxxiv). Although the Court of Appeals stated no reason for its decision, it obviously concluded that the question of joint enterprise was an issue of fact which had been determined by the jury and that determination of fact was binding on the appellate court. In Case No. 58,330, the Court of Appeals held, in the same unpublished opinion, that the district court erred in finding that it had no jurisdiction to hear and determine the plaintiffs' motion for a new trial based upon newly discovered evidence. It remanded the case to the district court to determine the merits of the motion. The plaintiffs filed a Petition for

Review in both cases with the Supreme Court. The Supreme Court granted the plaintiffs' Petition for Review.

In Case No. 57,563, the basic issue to be determined is whether there was substantial competent evidence presented at the trial to support the finding of the jury that Dale and Jessie Lightner were engaged in a joint enterprise at the time of the collision so as to impute Jessie's negligence to Dale, thus barring the action by Dale's heirs to recover for his wrongful death.

In order to determine this issue, it would be helpful at the outset to review the basic legal principles governing joint enterprise which have been recognized by this court. These general principles are discussed in depth in the excellent opinion by Justice Fromme in *Scott v. McGaugh,* 211 Kan. 323, 506 P.2d 1155 (1973). In *Scott,* the rule is recognized that in the absence of vicarious responsibility (imputed contributory negligence) a passenger in an automobile is required to use reasonable care for his own safety. Thus, as a general rule, a passenger may be barred from recovery if the negligence of a third person is a legally contributing cause of his harm, and if his own negligence has contributed to cause the accident.

In this case, the negligence of Dale Lightner, himself, is not involved. We are concerned here with imputed causal negligence arising from the relationship between Dale Lightner and Jessie Lightner. Imputed negligence may bar a plaintiff's recovery, but it does so not from culpability or wrongful act of the plaintiff but from liability for another person's wrongful act. Such responsibility or liability is imposed by reason of the relationship. One such relationship giving rise to imputed negligence is loosely referred to as a joint adventure or joint enterprise. In *Scott,* we recognized that the fiction which gives rise to imputed negligence has been criticized and is said to find small favor with the courts. This court criticized the doctrine in *Reading Township v. Telfer,* 57 Kan. 798, 48 Pac. 134 (1897). The doctrine of imputed negligence has been rejected by the courts in several of the states in automobile cases. *Bauer v. Johnson,* 79 Ill. 2d 324, 403 N.E. 2d 237 (1980); *Pierson v. Edstrom,* 286 Minn. 164, 174 N.W. 2d 712 (1970); *Weber v. Stokely-Van Camp, Inc.,* 274 Minn. 482, 491, 144 N.W.2d 540 (1966).

In the opinion in *Scott,* this court recognized that four basic elements are necessary to establish a joint venture so as to impose vicarious liability. They are:

(1) An agreement;

(2) a common purpose;

(3) a community of interest; and

(4) an equal right to a voice, accompanied by an equal right of control over the instrumentality (the automobile). 211 Kan. at 327.

There must be equal responsibility for the negligent operation of the vehicle, and there can be no equal responsibility unless there is equal privilege and right to direct and control its operations. *Schmid v. Eslick*, 181 Kan. 997, Syl. ¶ 2, 317 P.2d 459 (1957).

In *Scott*, 211 Kan. 323, we held without equivocation that the mere association of persons riding together in an automobile having a common purpose in making a trip and a common destination does not in itself give to a passenger equal privilege and right to control the method and means of operating the vehicle so as to constitute a joint enterprise imposing vicarious liability. The court adopted the "right of control" test, stating in Syl. ¶ 4:

"In determining a passenger's equal privilege and right to control an automobile, the essential question is whether, under the facts and circumstances, there is an *understanding* between the parties that he has the right and is possessed of equal authority to prescribe conditions of use and operation. This is commonly referred to as the 'right of control' test." (Emphasis supplied.)

Stated simply, there must be an understanding or an agreement in advance between the driver and the passenger that the passenger has a right to tell the driver how to drive the automobile.

In *Scott*, the opinion reviews many prior Kansas cases on the subject of joint enterprise involving a driver-passenger relationship including *Hunter v. Brand*, 186 Kan. 415, 350 P.2d 805 (1960), which involved an automobile collision where the husband was driving and the wife was a passenger. The plaintiff passenger and her husband resided on a farm near Sedan. The husband operated a cattle ranch and the station wagon was owned by a partnership composed of the husband and his father as the operators of a cattle company. The wife had accompanied her husband on a business trip to St. Joseph, Missouri, and they were returning home when they were involved in a collision. The issue of joint enterprise was submitted to the jury, which found a joint enterprise existed, thus imputing the negligence of the husband to the wife-passenger. On appeal, the Supreme

Court reversed and granted a new trial. The court found that there was no evidence or circumstances which justified the trial court's instruction on joint enterprise or the submission of that issue to the jury. As a matter of law, there was no evidence to support a finding that the driver and passenger had an equal right to manage or control the operation of the vehicle.

Following the decision in *Scott v. McGaugh*, 211 Kan. 323, this court decided *Schmidt v. Martin*, 212 Kan. 373, 510 P.2d 1244 (1973). In *Schmidt*, the opinion discussed the doctrine of imputed negligence, pointing out that in the course of our judicial history we have rejected the application of the doctrine of imputed negligence in the following special relationships: Parent and child; husband and wife; driver and passenger; owner of vehicle and driver; and bailor and bailee. The doctrine of imputed negligence is now approved and accepted in Kansas only when applied to two special relationships—the master-servant relationship and joint enterprise. The court in *Schmidt* rejected the application of the doctrine of imputed negligence in a case where the question was whether the negligence of the custodian of a child should be imputed to his parents as a matter of law solely on the basis of that relationship. Again the court pointed out that the only logical basis for the imputation of the negligence of one person to another is the right of the latter to control the acts of the former.

With these principles in mind, we turn to the evidentiary record in the case now before us to determine whether there is substantial competent evidence that Dale Lightner and Jessie Lightner were engaged in a joint enterprise at the time of the collision so as to impute Jessie's negligence as the driver to Dale as the passenger. The evidence in the record discloses that the Lightner family was engaged in an extensive farming operation involving several thousand acres of land. Somewhere along the way, a family farming corporation, D. Lightner Farms, Inc., had been created for tax reasons or some other business purpose. Dale Lightner was president and majority stockholder, owning 800 shares of the corporate stock. Jessie Lightner owned 20 shares of stock and was the corporate secretary. Three of the children, Lloyd, Robert, and Gerald Lightner, owned a total of 180 shares. Dale was 6'8" tall and weighed 270 pounds. Jessie was 5'8" and weighed about 160 pounds. It was undisputed that

on the day of the accident Dale and Jessie were on corporate business.

At the trial, all of the children testified. It is obvious from their testimony that Dale Lightner was the person who was in charge of the farm and directed the family farming operation. The testimony established that Jessie Lightner spent most of her time at the home and helped Dale in making family decisions and by paying the bills and keeping payments up to date.

The evidence established that Jessie Lightner very seldom made automobile trips relating to the farming operation. Ordinarily, one of the boys would make the trip. The only exception occurred when there were too many jobs around and the boys were otherwise occupied. On those rare occasions, Jessie had to be pulled away from the house because there was no one else available. On the day of the accident, the trip to the Batman land and to pick up the tractor was discussed at lunch; the boys were all busy and unable to go on the trip. For that reason, Jessie went along to help Dale. The only testimony presented by any of the children on the issue of Dale's right to control Jessie Lightner in the driving of a family vehicle was that of Lloyd Lightner, the eldest son. He categorically denied that Dale had any right to control Jessie in driving an automobile. He was asked on cross-examination whether in driving an automobile his father had equal authority to tell his mother what to do. He responded that his father didn't tell his mother how to drive, nor did he tell her where to drive or how fast to drive. He testified that "neither one of them said anything to the other one when one was driving." The record is completely lacking in any testimony whatsoever that there was any agreement or understanding between Dale Lightner and Jessie Lightner that Dale had the right to control Jessie's operation of an automobile. In the absence of any proof of a prior agreement or understanding, we have no hesitancy in holding that a joint enterprise was not sufficiently established in the case now before us.

At one time in the judicial history of this state, the concept was expressed by this court that, by the universal sense of mankind, a privilege of management, a superiority of control, a right of mastery is accorded to the husband over the wife during a joint automobile trip. See *Reading Township v. Telfer*, 57 Kan. at 802, decided in 1897. Since that time, the world has changed, and any

assumed superiority or mastery of a husband over a wife in driving an automobile can no longer be recognized in Kansas law.

Based on the rationale stated above, we hold as a matter of law that there is no substantial competent evidence in the record to establish that Dale and Jessie Lightner were engaged in a joint enterprise at the time of the accident so as to impute Jessie's negligence to Dale. The essential element of a prior agreement or understanding which gave Dale as a passenger the equal right to control the vehicle was not shown. We hold that the district court erred in instructing the jury on the subject of joint enterprise and in submitting that issue to the jury.

The judgment of the district court is reversed in Case No. 57,563. The case is remanded to the district court to afford the plaintiffs a new trial.

In view of the fact that we have ordered a new trial in Case No. 57,563, the appeal from the order of the district court denying plaintiffs' motion for a new trial on newly discovered evidence becomes moot, although we agree with the Court of Appeals that the trial court erred in finding that it had no jurisdiction to determine that motion.

The judgment of the district court and the judgment of the Court of Appeals is reversed. The cases are remanded with directions to grant the plaintiffs a new trial on all issues.

LOCKETT, J., concurring: I agree with the results reached by the majority of the court. I cannot agree that we should continue to overturn the verdicts of juries that have weighed the evidence after having been properly instructed, because the majority of this court seeks to escape the harsh results of imputed negligence.

The court has continually criticized the joint venture doctrine of imputing the negligence of the driver of an automobile to the passenger. The majority states the four basic elements necessary to establish a joint venture so as to impose vicarious liability:

(1) An agreement;
(2) a common purpose;
(3) a community of interest; and
(4) an equal right to a voice, accompanied by an equal right of control over the automobile.

To avoid the confines of the doctrine, the majority now re-

quires that there must be an understanding or an agreement in advance between the driver and the passenger that the passenger has the right to tell the driver how to drive the automobile. The majority deletes the requirement that the right to control the automobile must be equal between the passenger and the driver.

Rather than continue to recognize the doctrine of imputed negligence in automobile cases, we should reject its application. When our legislature adopted comparative negligence, it provided the proper method to determine the percentage of fault of the driver of an automobile and the passenger. It is time that we recognize the wisdom of the legislature.

McFARLAND, J., dissenting.