Douglas Allan WOLFGANG, Individually, and Douglas Allan Wolfgang for the benefit of Jerrilyn Ann Wolfgang, Plaintiff,

v.

MID–AMERICAN MOTORSPORTS, INC., et al., Defendants.

Civ. A. No. 94–2135–GTV.

United States District Court, D. Kansas.

Aug. 4, 1995.

Victor A. Bergman, Shamberg, Johnson & Bergman, Overland Park, KS, for plaintiff.

J. Michael Grier, James M. Warden, Michael Kuckelman, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, and John J. Jurcyk Jr., Jeanne Gorman Rau, and Daniel F. Church, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, for defendants.

## MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

This is a diversity jurisdiction case in which plaintiff seeks damages from defendants. He alleges claims for both ordinary negligence and gross negligence. His claims are for injuries he suffered in a "sprint" automobile racing accident at Lakeside Speedway in Kansas City, Kansas. The case is now before the court on plaintiff's motion for partial summary judgment (Doc. 93) and defendants' motion for summary judgment (Doc. 95). For the reasons set forth below, each of the motions for summary judgment are granted in part and denied in part.

### I. Factual Background

The following uncontroverted facts are established in accordance with Fed.R.Civ.P. 56 and D.Kan.Rule 206(c):

On April 3, 1992, plaintiff Wolfgang participated as a driver in a practice session at Lakeside Speedway in Kansas City, Kansas. He was involved in a crash and was severely burned. Plaintiff asserts in the complaint that defendants were negligent in their handling of the fire that occurred following the crash. Plaintiff seeks damages on account of burns he suffered, and not for other injuries sustained in the crash. Plaintiff had signed a release prior to racing at Lakeside which defendants contend absolves them from all liability.

Defendants remaining in the case are Mid–America Motorsports, Inc., owner of Lakeside Speedway; R.E.D. Racing, Inc., a promotor of the World of Outlaws race at Lakeside Speedway held on April 4 and 5, 1992; and World of Outlaws, Inc., the sanctioning body that contracted with the promoters to bring the races to Lakeside Speedway on April 4 and 5, 1992.

On April 3, 1992, plaintiff and other sprint car racers were at Lakeside Speedway to conduct practice "hot" laps in preparation for the April 4 and 5 races. A hot lap is a lap made at the car's top speed. Defendants were aware that the risk of accidents was high during a practice session such as this. Defendants admit that it is inevitable that crashes will occur and that drivers could be rendered unconscious in racing accidents. On April 3, 1992, plaintiff hit a tire lying next to the track, lost control of his sprint car, hit the wall, and a fire erupted in the car. Plaintiff's race car used methanol fuel which is highly flammable and burns invisibly in daylight.

Defendant Mid–America Motorsports admits that it had a duty to organize an in-house fire safety and rescue team to respond to racing accidents. The three firefighters who were present on April 3, 1992, include Loyal "Butch" Smeltzer, Robert Ensley, and Dorsey Simpson. Smeltzer was the head firefighter. He has experience as a volunteer firefighter since 1959 and has been a volunteer for Liberty, Missouri since 1973. He also has had racetrack firefighting experience at various racetracks in Indiana and Kansas dating from 1975 to present. Ensley has experience as a volunteer fireman for South Platte, Missouri. Simpson had no direct firefighting responsibilities and had no fire training or fire clothing at the time of the crash. He was present to drive one of the trucks in response to any crash.

On April 3, the firefighters had the following equipment: two trucks (a 1978 Ford Ranchero and a 1979 Dodge pickup truck), five dry-chemical fire extinguishers, pry bars for use in extrication of drivers, and some protective clothing provided by the firefighters themselves. There was also an ambulance and a wrecker present.

786

There is conflicting testimony regarding the time it took for the fire fighters to reach plaintiff's car (from 30–45 seconds up to 2–3 minutes). Other drivers and pit crew members attempted to help in the rescue, adding to the confusion of the situation. They brought additional fire extinguishers from the pit areas to help in putting out the fire. Defendants had made no plans for crowd control in the event of an accident. Smeltzer discharged several fire extinguishers at the front of the car, but did not realize a fire was present in the cockpit until later. It is unclear to what extent Ensley assisted in putting out the fire in the cockpit of the car. It appears that Ensley was not wearing some of his protective gear.

## II. Summary Judgment Standards

■ In deciding a motion for summary judgment, the court must examine any evidence tending to show triable issues in the light most favorable to the nonmoving party. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985). A moving party is entitled to summary judgment only if the evidence indicates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine factual issue is one that "can reasonably be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.*

## III. Discussion

### A. Plaintiff's Motion for Partial Summary Judgment (Doc. 93)

Plaintiff seeks summary judgment on defendants' affirmative defense of release. Plaintiff makes three arguments in support of the motion. First, plaintiff contends that the release is void as a matter of law under a public policy exception because defendants' failed to comply with certain laws and regulations. Second, plaintiff asserts that the release does not extend to gross negligence or wanton conduct. Finally, plaintiff contends that the scope of the release does not cover the post-crash fire safety and rescue inadequacies complained of by plaintiff.

#### 1. Public Policy

Plaintiff argues that the release is void as a matter of law because it is contrary to public policy. Plaintiff contends that defendants' failure to comply with applicable Kansas City, Kansas fire protection laws, the Occupational Safety and Health Act (OSHA) regulations, and a Kansas City, Kansas building permit requirement renders the release void under the public policy exception.

Releases between private parties in racing cases have been widely upheld in other jurisdictions. *See e.g., Hammer v. Road America, Inc.,* 614 F.Supp. 467, 470 (E.D.Wis. 1985), *aff'd,* 793 F.2d 1296 (7th Cir.1986); *Barnes v. Birmingham Int'l Raceway, Inc.,* 551 So.2d 929, 932 (Ala.1989); *Theis v. J & J Racing Promotions,* 571 So.2d 92 (Fla.Ct. App.1990); *Trainor v. Aztalan Cycle Club, Inc.,* 147 Wis.2d 107, 432 N.W.2d 626, 631 n. 1 (App.1988) and numerous cases cited therein. In two unpublished opinions in Shawnee County District Court, releases were upheld under Kansas law in cases which involved releases signed by racing spectators injured in pit and infield areas. *Lloyd v. Topeka Racing Ass'n,* Case No. 80–CV–764 (Shawnee Co.Dist.Ct.) (Bullock, J.), *aff'd,* Case No. 54,140 (Kan.Ct.App.1982) (unpublished);

*Runyan v. Topeka Raceway,* Case No. 85–CV–780 (Shawnee Co.Dist.Ct.1987) (Vickers, J.), *appeal dismissed,* 769 P.2d 682 (1989).

Plaintiff argues that even if similar racing releases are generally upheld by courts, the release signed by plaintiff is void under the public policy exception announced in *Hunter v. American Rentals, Inc.,* 189 Kan. 615, 371 P.2d 131 (1962). In *Hunter,* the Kansas Supreme Court stated that "[p]arties cannot stipulate for the protection against liability for negligence in the performance of a legal duty or a duty of public service, or where the public interest is involved or a public duty owed, or when the duty owed is a private one where the public interest requires the performance thereof." The court held that an exculpatory clause in a trailer rental agreement violated the public policy of Kansas and was void. The court relied on two key facts. First, the state legislature had established safety standards in towing vehicles, which the defendant had violated. Second, a business engaged in renting trailers to be driven on public highways owed a duty to plaintiff and the general public to comply with the law regulating towing safety.

 Even if the court assumed that defendants did in fact violate the OSHA provision, the Kansas City, Kansas fire code and the building code, the court finds that these are not the type of statutes and regulations which invoke the public policy exception. Under *Hunter,* a release from liability is not enforced when a person attempts to contract for relief from "a duty imposed by law for the public benefit." *Belger Cartage Service, Inc. v. Holland Construction Co.,* 224 Kan. 320, 582 P.2d 1111 (1978). The OSHA provision regulates storage of hazardous materials. Its purpose is to protect employees. The Kansas City, Kansas fire code ordinance regulates the storage, handling and use of hazardous substances. The code exempts the storage or use of the material in the fuel tank of a motor vehicle. Finally, the Kansas City, Kansas building code regulates the use and occupancy of all buildings and structures within Kansas City, Kansas. The speedway did not have a certificate of occupancy on the date of the accident, but approval for the permit had been given at a city council meeting.

In *Butler Mfg. Co. v. Americold Corp.,* 1993 WL 406730 (D.Kan.), Judge Lungstrum of this court considered a similar argument in the context of a lease agreement for warehouse space. The contract purported to limit the lessor's liability for negligence. Plaintiffs argued that defendant's violations of Kansas City, Kansas fire codes and OSHA standards made the damage limitations unenforceable under the public policy exception. Judge Lungstrum rejected the argument stating that "[a] rule that any violation of a fire code by a warehouseman would serve to invalidate the damage limitation provision, even if such violation constituted merely ordinary negligence, would seriously impair parties' ability to determine allocation of risk when negotiating warehouse storage contracts, and the court does not believe Kansas would adopt such a rule. Of course, any violation of an applicable fire code could be relevant to proof of negligence, and could also be evidence (but not conclusive proof) of willful or wanton conduct by defendants."

"Voluntary sporting competitions are not matters of important public interest, as that term is used in considering which matters may not be the subject of exculpatory agreements." *See Walton v. Oz Bicycle Club of Wichita,* 1991 WL 257088 (D.Kan.), *aff'd,* 977 F.2d 597 (10th Cir.1992) (court upheld release signed by participant in a bicycle race). The state of Kansas has not chosen to regulate the sport of auto racing. The court concludes that the release is not contrary to the public policy of Kansas even if the above statutes were violated by defendants. The court will not invalidate the release on this basis.

### 2. Reckless and Wanton Conduct

Next, plaintiff contends that the release does not extend to gross negligence or reckless and wanton conduct. The agreement signed by plaintiff states that plaintiff will release defendants from liability for an injury to plaintiff "whether caused by the negligence of [defendants] or otherwise." Plaintiff argues that the release purports to exculpate defendants for reckless and wanton con-

duct in addition to negligence, making the entire release void.

■■■ Defendants agree that any attempt to limit liability for gross negligence or willful and wanton conduct is unenforceable. *See Butler Mfg. Co. v. Americold Corp.*, 835 F.Supp. 1274, 1282 (D.Kan.1993) (under Kansas common law, willful or wanton conduct cannot be the subject of limitations on liability). To the extent that the release attempts to limit liability for gross negligence or willful and wanton conduct, it is unenforceable.

■■ This does not mean that the entire release is void as plaintiff argues. A better interpretation of the law is that any "term" in a contract which attempts to exempt a party from liability for gross negligence or wanton conduct is unenforceable, not the entire agreement. Restatement (Second) of Contracts § 195(1); *see also Murphy v. North American River Runners, Inc.*, 186 W.Va. 310, 412 S.E.2d 504, 510 (1991) ("[A] general clause in an exculpatory agreement or anticipatory release exempting the defendant from all liability for any future negligence will not be construed to include intentional or reckless misconduct or gross negligence, unless such intention clearly appears from the circumstances."). The court concludes that the release is not entirely void because it attempts to relieve liability for gross negligence or wanton conduct. That portion of the release is simply unenforceable.

Plaintiff also argues that because defendants' conduct was grossly negligent and wanton, the release is void as a matter of public policy. The court does not agree. If defendants' conduct was grossly negligent or wanton, then plaintiff can recover because such conduct is outside the scope of the release. *See Barnes v. Birmingham Int'l Raceway, Inc.*, 551 So.2d 929, 933 (Ala.1989) (court held that pre-race releases, although valid as to negligent conduct, are invalid and contrary to public policy as to wanton or willful conduct). The release is not entirely void. Recovery for defendants' acts of simple negligence remain barred by the release.

*3. Scope of the Release*

Plaintiff contends that the scope of the release does not cover the post-crash fire safety and rescue inadequacies complained of by plaintiff.

The release that plaintiff signed prior to racing is broadly written and provides in part:

**IN CONSIDERATION** of being permitted to enter for any purpose any **RESTRICTED AREA** ... or being permitted to compete ..., **EACH OF THE UNDERSIGNED,** for himself, his personal representatives, heirs, and next of kin, acknowledges, agrees and represents that he has, or will immediately upon entering any of such restricted areas, and will continuously thereafter, inspect such restricted areas and all portions thereof which he enters and with which he comes in contact and he does further warrant that his entry upon such restricted area or areas and his participation, if any, in the event constitutes an acknowledgement that he has inspected such restricted area and that he finds and accepts the same as being safe and reasonably suited for the purposes of his use, and he further agrees and warrants that if, at any time, he is in or about restricted areas and he feels anything to be unsafe, he will immediately advise the officials of such and will leave the restricted areas:

1. **HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE** the promoter, participants, racing association, sanctioning organization or any subdivision thereof, track operator, track owner, officials, car owners, drivers, pit crews, any persons in any restricted area, promoters, sponsors, advertisers, owners, and lessees of premises used to conduct the event and each of them, their officers and employees, all for the purposes herein referred to as "releasees", from all liability to the undersigned, his personal representatives [etc.] ... for any and all loss or damage, and any claim or demands therefor on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releasees or otherwise while the undersigned is in or upon the restrict-

ed area, and/or, competing, officiating in, observing, working for, or for any purpose participating in the event

. . . . .

**3. HEREBY ASSUMES FULL RE-SPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE** due to the negligence of releasees or otherwise while in or upon the restricted area and/or while competing, officiating, observing, or working for or for any purpose participating in the event.

**EACH OF THE UNDERSIGNED** expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage. **EACH OF THE UNDERSIGNED** further expressly agrees that the foregoing release, waiver, and indemnity agreement is intended to be a broad and inclusive as is permitted by the law of the Province or State in which the event is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

Plaintiff argues that the post-crash fire safety and rescue inadequacies asserted by plaintiff were not within the contemplation of the parties when the release was signed. Defendants argue that rescue operations are an integral part of auto racing and that they are encompassed in the release.

 As a general rule in Kansas, agreements that exempt a party from liability are strictly construed against the party relying on the agreement. *Belger Cartage Serv. v. Holland Constr. Co.*, 224 Kan. 320, 329, 582 P.2d 1111 (1978). The intention must be expressed in clear and unequivocal language. *Id.* It appears that the court's emphasis is on the clear intent to release liability, and not a requirement that each act of possible negligence be listed in the agreement. *See Talley v. Skelly Oil Co.*, 199 Kan. 767, 433 P.2d 425 (1967) (Injuries sustained by plaintiff when overhead heater fell within the scope of broad exculpatory agreement because it "happened in connection with his

use and occupancy of the premises."). Judge O'Connor of this court has stated,

> The terms of the agreement are not to be extended to situations not plainly within the language employed. It is not necessary, however, that the agreement contain specific or express language covering in so many words the party's negligence, if the intention to exculpate the party from liability appears from the contract, the surrounding circumstances, and the purposes and objects of the parties.

*Connolly v. Samuelson*, 671 F.Supp. 1312, 1317 (D.Kan.1987) (citations omitted) (case involved exculpatory agreement between tourist and travel agent). *See also DeBoer v. Florida Offroaders Driver's Ass'n, Inc.*, 622 So.2d 1134, 1136 (Fla.Dist.Ct.App.1993) ("Further, for a release to be effective, it is not necessary to list each possible class of releasor or each possible manner in which a releasor could be injured during an inherently dangerous event. The possibilities are endless."); *Mayer v. Howard*, 220 Neb. 328, 370 N.W.2d 93 (1985) (latent defect in track which caused plaintiff's injury during motorcycle race was within the contemplation of the release because plaintiff agreed to take whatever steps were necessary to assure the safety of the track); *Schlessman v. Henson*, 83 Ill.2d 82, 46 Ill.Dec. 139, 413 N.E.2d 1252 (1980) (cave-in of banked portion of race track was within the scope of the release).

A few cases have dealt specifically with releases in the context of racing rescue operations. In *Groves v. Firebird Raceway, Inc.*, 849 F.Supp. 1385 (D.Idaho 1994), the court held that the release barred claims by a driver for injuries sustained during negligent rescue operations. In that case, however, the release specifically mentioned rescue operations. Similarly in *Cadek v. Great Lakes Dragaway, Inc.*, 843 F.Supp. 420 (N.D.Ill. 1994), the court held that a release which specifically mentioned negligent rescue operations barred driver's claim.

At least one court has held that the issue of whether negligent rescue operations were within the contemplation of the parties is a question of fact and ordered denial of summary judgment. *Arnold v. Shawano County Agricultural Society*, 111 Wis.2d 203, 330

N.W.2d 773, 778 (1983). "The contract was provided by the defendants for execution. If they meant to include rescue operations, it certainly could have been written into the agreement. Even though an attempt was made in the contract to make it all inclusive, ambiguities still exist on its face." *Id.,* 330 N.W.2d at 779. *Shawano* involved a race car driver who sustained brain damage caused by chemicals sprayed during an attempt to extinguish a fire which had erupted in his car following an accident. The decision to strictly construe the agreement arguably was based upon the unusual and unforeseen circumstances of the injury. *Shawano* is distinguishable from the present case on this basis.

The court concludes that the scope of the release includes ordinary negligence in connection with post-crash fire safety and rescue. The release is broadly written. Because of the broadness of the release, the court concludes that firefighting and rescue operations following a crash were within the contemplation of the parties. The court denies plaintiff's motion for partial summary judgment in part and grants the motion in part. The release bars plaintiff's claims for negligence. The release is unenforceable to the extent that it attempts to limit liability for gross negligence or wanton conduct.

### B. Defendant's Motion for Summary Judgment (Doc. 95)

Defendants seek summary judgment on plaintiff's claims on several grounds. First, defendants contend that the release signed by plaintiff prior to racing bars plaintiff's claims of negligence. Second, defendants argue that plaintiff expressly assumed the risks involved. Third, defendants contend that their conduct did not rise to the level of gross negligence or reckless and wanton conduct. Fourth, defendants assert that plaintiff has not established causation. Finally, defendant World of Outlaws argues that it did not owe any duty to plaintiff to ensure that racetrack owners and promoters provided adequate rescue procedures and operations.

### 1. The Release

Defendants contend that the release signed by plaintiff prior to racing bars plaintiff's claims of negligence. As discussed above, the court agrees. The court has addressed each of plaintiff's arguments that the release does not bar these claims. For the reasons stated above, plaintiff's claims based on simple negligence are barred by the release.

In addition, plaintiff's claims for the benefit of his spouse for loss of consortium are barred by the release to the extent that the claims are based on simple negligence. Under Kansas law, the right to recover for loss of consortium vests in the spouse who has been injured. *Stucky v. Health Care Products, Inc.,* 794 F.Supp. 1069, 1070 (D.Kan.1992). A plaintiff's spouse has no separate cause of action for loss of consortium. *Annis v. Butler Mfg.,* 715 F.Supp. 328 (D.Kan.1989) (citing K.S.A. § 23–205). A loss of consortium claim is vested in the plaintiff who files suit for personal injuries and is for the benefit of the plaintiff's spouse. *McGuire v. Sifers,* 235 Kan. 368, 384, 681 P.2d 1025 (1984). Under Kansas law, it appears that the loss of consortium claim is derivative of the injured plaintiff's right to recovery. *See id.* (damages for loss of consortium must be reduced by the proportionate share of plaintiff's negligence under Kansas comparative fault statute).

In addition, plaintiff signed an exculpatory release which bars his claims for negligence on behalf of himself and his spouse. A valid release signed by a race participant bars the claims of relatives for loss of consortium. *See e.g., Groves v. Firebird Raceway, Inc.,* 849 F.Supp. 1385 (D.Idaho 1994) (any other result would render releases meaningless). Accordingly, plaintiff's loss of consortium claim on behalf of his spouse is barred to the extent that it is based upon the simple negligence of defendants.

### 2. Assumption of Risk

Next, defendants argue that plaintiff expressly assumed the risks involved in auto racing and his claims are barred. Kansas case law on assumption of risk is very limited following the adoption of comparative fault. Since then, the doctrine has been limited to

cases of employer/employee relationships. *See Tuley v. Kansas City Power & Light Co.*, 252 Kan. 205, 843 P.2d 248 (1992) ("In Kansas, the common-law assumption of risk doctrine is restricted to cases involving employer-employee relationships."). The court, therefore, does not believe that the defense of assumption of risk is applicable in this case. Regardless, it is not necessary to resolve the issue of assumption of risk because the court finds the release valid. *See Walton v. Oz Bicycle Club of Wichita*, 1991 WL 257088 (D.Kan.1991) (status of doctrine unclear under Kansas law; it was not necessary to resolve the issue of assumption of risk because court upheld the release).

### 3. *Gross Negligence/Reckless and Wanton Conduct*

Defendant contends that summary judgment is appropriate on plaintiff's claim of gross negligence or reckless and wanton conduct because defendants' behavior did not rise to that level as a matter of law. Plaintiff argues that a question of fact remains whether defendants' conduct was willful or wanton.

The Kansas courts have set forth a test for establishing gross and wanton negligence:

Proof of a willingness to injure is not necessary in establishing gross and wanton negligence. This is true because a wanton act is something more than ordinary negligence but less than willful injury. To constitute wantonness the act must indicate a realization of the imminence of danger and a reckless disregard or a complete indifference or an unconcern for the probable consequences of the wrongful act.

*Boaldin v. University of Kansas*, 242 Kan. 288, 293, 747 P.2d 811, 814 (1987) (quoting *Lee v. City of Fort Scott*, 238 Kan. 421, 710 P.2d 689 (1985)).

Defendants were aware that accidents are inevitable in sprint car racing and that fires can occur as a result of an accident. Defendants argue that the steps taken to prevent injury precludes a finding of wantonness. Defendants point out that they provided fire rescue services; fire extinguishers; fire trucks; firefighters wearing fire protective uniforms and trained in fighting fuel fires and auto extrication; an ambulance with trained personnel; a wrecker; and procedures to call a Life Flight helicopter to the scene.

█ Plaintiffs have presented evidence that defendants did not provide any specific training or written procedures for the firefighters to follow in the event of a crash. Plaintiffs assert that the firefighters should have been trained in fighting methanol fires. Defendants contend that it was not necessary for them to provide training at the track because the firefighters were fully trained at their volunteer positions.

It is unclear to what extent the firefighters were familiar with the design of plaintiff's sprint car. A release mechanism present on the steering wheel and a fuel line that ran through the cockpit added to the difficulty of extrication and putting out the fire. Plaintiffs argue that defendants' lack of knowledge of these design features constituted gross and wanton negligence.

Plaintiff asserts that an inadequate number of firefighters, inadequate equipment, training, and instruction to firefighters constitutes reckless and wanton conduct which exacerbated plaintiff's injuries. Plaintiff contends that the facts presented preclude summary judgment.

"As a general rule, the presence or absence of negligence in any degree is not subject to determination by the court on summary judgment, for such a determination should be left to the trier of fact. Only when reasonable persons could not reach differing conclusions from the same evidence may the issue be decided as a question of law." *Gruhin v. City of Overland Park*, 17 Kan.App.2d 388, 392, 836 P.2d 1222, 1225 (1992).

Viewing the facts in the light most favorable to the plaintiff, the court cannot rule as a matter of law that defendants were not grossly negligent or wanton in their rescue attempts. Accordingly, the motion for summary judgment is denied as to this issue. The question of whether defendants were grossly negligent or reckless and wanton remains for trial.

#### 4. Causation

 Next, defendants contend that plaintiff has not established causation between the acts of defendants and plaintiff's injuries. Defendants argue that plaintiff made public admissions of fault for the accident which conclusively establish that plaintiff's actions caused the accident and his injuries. The court finds that plaintiff's statements do not preclude a finding that defendants were at fault for acts occurring during the rescue operation. Plaintiff has presented sufficient evidence to preclude summary judgment on the issue of causation. Accordingly, this issue remains for trial.

#### 5. Duty

Finally, defendant World of Outlaws contends that it did not owe a duty to plaintiff to ensure that racetrack owners and promoters provided adequate rescue operations. World of Outlaws is the sanctioning body that contracted with promoters to bring the races to Lakeside Speedway.

 The president of World of Outlaws has admitted a duty to ensure adequate fire protection in his deposition. He spoke with officials from Mid–America Motorsports and R.E.D. Racing on April 3, 1992 about the level of fire protection present and the placement of fire rescue equipment. He was also responsible for requesting the practice session held on April 3. World of Outlaws officials, including the president, were present on April 3, and performed various tasks during the practice session including acting as flag person and ordering the placement of a large tire near the racing surface that plaintiff struck in the accident. The court concludes that plaintiff has presented sufficient evidence to show that World of Outlaws undertook a duty to plaintiff to ensure safe racing conditions. *See Simpson v. Byron Dragway, Inc.*, 210 Ill.App.3d 639, 155 Ill. Dec. 398, 402, 569 N.E.2d 579, 583 (1991) (sanctioning body dismissed because its only involvement was awarding points for performance). World of Outlaws is protected, however, from liability for negligence in the undertaking of that duty because of the pre-race release signed by plaintiff. The question remains for trial whether defendant World of Outlaws was grossly or wantonly negligent in its conduct.

#### C. Conclusion

In summary, the court finds that the release bars plaintiff's claims for simple negligence against all defendants. It also bars plaintiff's claims on behalf of his spouse for loss of consortium based on simple negligence. The release is unenforceable to the extent that it attempts to bar claims for gross negligence or wanton conduct. Whether defendants' conduct was grossly negligent or wanton remains a question for trial. Establishment of causation and whether defendant World of Outlaws failed to meet the duty owed to plaintiff also remain for trial.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for partial summary judgment (Doc. 93) is granted in part and denied in part.

IT IS FURTHER ORDERED that defendants' motion for summary judgment (Doc. 95) is granted in part and denied in part.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**