No. 80,640

SHARON KLOSE, natural mother and next friend of Colin Klose, a minor, *Appellant,* v. WOOD VALLEY RACQUET CLUB, INC., UNITED STATES TENNIS ASSOCIATION, and MISSOURI VALLEY TENNIS ASSOCIATION, *Appellees.*

(975 P.2d 1218)

Opinion filed April 16, 1999.

*Ronald K. Barker,* of Kansas City, Missouri, argued the cause, and *Larry E. Benson,* of Kansas City, Kansas, was with him on the brief for appellant.

*Jay C. Hinkel,* of Clutter, Hinkel & Aadalen, LLP, of Topeka, argued the cause and was on the brief for appellee Wood Valley Racquet Club, Inc.

*Kathryn A. Regier,* of Blackwell Sanders Peper Martin LLP, of Overland Park, argued the cause, and *James D. Conkright,* of Sanders Conkright & Warren LLP, of Kansas City, Missouri, was with her on the brief for appellees United States Tennis Association and Missouri Valley Tennis Association.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a personal injury action brought by Sharon Klose as mother and next friend of Colin Klose, a minor, against Wood Valley Racquet Club, Inc., (Wood Valley), the United

States Tennis Association (USTA), and the Missouri Valley Tennis Association (MVTA). The district court entered summary judgment against Klose and in favor of defendants. Klose appealed. This court transferred the matter from the Court of Appeals.

Determinations of fact that are not appealed from are final and conclusive. *Justice v. Board of Wyandotte County Comm'rs*, 17 Kan. App. 2d 102, 109, 835 P.2d 692, *rev. denied* 251 Kan. 938 (1992). The district court's summary of the controverted and uncontroverted facts is as follows:

"1. Plaintiff's 14 year old son, Colin Klose, was injured when he ran into a concrete wall while playing a singles tennis match on court number one at the Wood Valley Junior Tennis Tournament in November 1994.

"2. Defendant, Wood Valley, owned and operated the tennis court facilities in which Klose was injured.

"3. The Wood Valley facility was constructed in 1974.

"4. Although Wood Valley's tennis courts were resurfaced and remarked in 1992, the layout of court number one and its relationship to the adjacent perimeter wall has not changed since the facility's construction in 1974.

"5. Although the concrete perimeter wall adjacent to court number one was painted a similar dark green color as the surface of the court and the padding on other walls, there has never been a screen, curtain, or other obstruction or impediment to the court participant's view of the wall.

"6. Plaintiff alleges that Wood Valley placed court number one at a distance from the perimeter wall that was less than that 'approved' by USTA and MVTA for sanctioned junior tennis tournaments.

"7. Reasons for sanctioning a tournament include assurance of uniformity of the rules of play and the provision of national and regional ranking, but not to assure uniformity of the facilities for play.

"8. It is controverted whether USTA Rules of Tennis provide spacing requirements for side and back spacing or merely spacing recommendations. 'Tennis Courts 1992-1993,' a USTA publication, provides 'factual information to those considering the construction of a tennis court.' However, Appendix 1 which contains Guideline Specifications for Tennis Court Construction *'must be considered to be guidelines only.'* ('Tennis Courts 1992-1993,' p. 11) [Emphasis added]. The publication also states:

'There are acceptable variations in the playing area, because it is necessary in particular circumstances for the court designer to balance the needs of the players and spectators, the expected quality of play, space limitations, and cost. There may be situations in which one or more of the suggested playing area dimensions should be varied, depending on the physical characteristics of the site, possible accommodation for line umpires and photographers, or other factors.'

'Tennis Courts 1992-1993,' p. 21.

"On the same page, the publication states with regard to 'side space,'

'Twelve feet (12') (3.658 m) from sideline to fixed obstruction (i.e. sidestop, light pole, wall, etc.), is the minimum requirement for tournament play. Only where space limitations become a factor and the 12' (3.658 m) minimum cannot be provided, the side space from sideline to a fixed obstruction may be reduced to not less than 10' (3.048 m). For indoor courts where netting is used between courts, the netting is considered to be a movable obstruction, in which case 9' (2.743 m) is allowed between sideline and netting.'

'Tennis Courts, 1992-1993,' p. 21.

"On page 24 of the same publication, a diagram labeled, 'Tennis Court Layout' provides 12' of side space from the doubles line to the adjoining court with the wording, 'MINIMUM RECOMMENDED.'

"Further, in Section I.E.: Guide Specifications for Tennis Court Construction: Tennis Court Dimensions and Related Measurements on page 110 of the same publication states, under '4.0 SIDE SPACE':

'Not less than 12' (3.658 m) from side line to fixed obstruction (i.e. sidestop, light pole, wall, etc.). For indoor courts where netting is used between courts, the netting is considered to be a movable obstruction, in which case 9' (2.743) is considered a minimum between sideline and netting. Only where space limitations become a factor and the 12' (3.658 m) minimum cannot be provided may the side space from side line to a fixed obstruction be reduced to a minimum of 9½' (2.896 m).'

'Tennis Courts, 1991-1993,' at p. 110.

"9. The distance from Wood Valley's court number one doubles sideline to the wall is 8 feet and 10 inches. The distance from the singles court sideline to the wall is 13 feet and 4 inches.

"10. As owner and operator of the tennis facilities, Wood Valley was in control of the facilities. Although USTA and MVTA may refuse to sanction a tournament, Wood Valley controlled their own premises.

"11. It is controverted whether USTA organizes, administers, supervises or controls the tournaments at Wood Valley that it sanctions. However, the sanctioning process in this case involved an application and agreement by Wood Valley that they would abide by the rules of tennis for ranking purposes. No officials from USTA/MVTA were on site on the day of Colin Klose's accident."

The issue we address is whether the district court was correct in granting summary judgment to the defendants based upon the statute of repose. We recently stated the applicable standard of review:

"Appellate review of a district court's grant of summary judgment is governed by well-established rules. The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which

may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A defendant is entitled to summary judgment if the defendant can establish the absence of evidence necessary to support an essential element of the plaintiff's case. *Hammig v. Ford,* 246 Kan. 70, 73, 785 P.2d 977 (1990); *Crooks v. Greene,* 12 Kan. App. 2d 62, 64, 736 P.2d 78 (1987).

"When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. *Glenn v. Fleming,* 247 Kan. 296, 305, 799 P.2d 79 (1990); *Slaymaker v. Westgate State Bank,* 241 Kan. 525, 531, 739 P.2d 444 (1987). In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case.

"To have evidentiary value, the particular document or testimony relied upon by the party opposing summary judgment must be probative of that party's position on a material issue of fact. *Slaymaker,* 241 Kan. at 530. Probative evidence is that which 'furnishes, establishes or contributes toward proof.' *Akin v. Estate of Hill,* 201 Kan. 306, 311, 440 P.2d 585 (1968). On appeal we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Mitzner v. State Dept. of SRS,* 257 Kan. 258, 260-61, 891 P.2d 435 (1995)." *Saliba v. Union Pacific R.R. Co.,* 264 Kan. 128, 131-32, 955 P.2d 1189 (1998).

The district court concluded that the statute of repose, K.S.A. 1998 Supp. 60-513(b), abolished any cause of action that Klose might have had against Wood Valley. The statute provides:

"(b) Except as provided in subsections (c) and (d), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action."

Citing *Menne v. Celotex Corp.,* 722 F. Supp. 662 (D. Kan. 1989), *See v. Hartley,* 257 Kan. 813, 896 P.2d 1049 (1995), and *Harding v. K.C. Wall Products, Inc.,* 250 Kan. 655, 831 P.2d 958 (1992), the district court reasoned: Wood Valley was constructed in 1974, and that is when the court lines were laid down in relation to the wall. That was the last act of Wood Valley that gave rise to the cause of action. After 1984, therefore, the statute of repose pre-

cluded any cause of action based on proximity of the court and the wall. By the time Colin was injured in 1994, Klose's cause of action had been abolished for 10 years.

On appeal, Klose argues that 60-513(b) has no application in this case because it pertains only when the injury is not immediately ascertainable. Appellant relies on *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 820 P.2d 390 (1991), and *Ruthrauff, Administratrix v. Kensinger*, 214 Kan. 185, 519 P.2d 661 (1974), which support her construction. The version of 60-513(b) that was at issue in *Gilger* and *Ruthrauff*, however, has been amended by the legislature to its present state. Since being amended to its present version, the statute has been held to require a negligence action to be brought within 10 years of the wrongful act. See *Dobson v. Larkin Homes, Inc.*, 251 Kan. 50, 52-53, 832 P.2d 345 (1992). Thus, the district court's application of 60-513(b) as a bar to Klose's action is correct.

Klose also contends that in answer to one of her interrogatories, Wood Valley withdrew its defense of the statute of limitations. For this contention, she relies on a discovery document that is partially quoted in appellant's brief, but for which no record reference is given. In any event, the argument Klose bases on the contention also is flawed. She would have the court equate the statute of limitations with the statute of repose so that if Wood Valley withdrew the statute of limitations defense, it likewise withdrew a statute of repose defense. Klose's contention has no merit. She cites *Kerns v. G.A.C., Inc.*, 255 Kan. 264, 268, 875 P.2d 949 (1994): "K.S.A. 1993 Supp. 60-513 contains both a statute of limitations, subsection (a), and a statute of repose, subsection (b)." This court has distinguished a statute of repose from a statute of limitations in the following terms: The former bars a cause of action after a set period of time even if it has not yet accrued; the latter bars an action within a set period of time after the action accrues. 255 Kan. at 270-71.

Klose's theory of negligence against USTA and MVTA is that they should have withheld their sanctioning of the tennis tournament because the proximity of the wall to the court on which Colin was playing created a dangerous condition. By sanctioning the tournament, they failed to protect him from the dangerous condition.

The district court concluded as a matter of law that no duty existed for USTA and MVTA to protect Colin from injury. Thus, there could be no breach of duty to support Klose's claim of negligence.

On appeal, Klose contends that the duty of USTA and MVTA may be found in Restatement (Second) of Torts § 315 (1964), which provides:

> "There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
> (b) a special relation exists between the actor and the other which gives to the other a right to protection."

The Comment to § 315 directs the reader to other sections for the "special relations" upon which the duty is based. They include parent and child, master and servant, possessor of land or chattels and licensee, one in charge of a person having dangerous propensities, common carrier and passenger, innkeeper and guest, possessor of land and invitee, and one who takes custody of another so as to deprive the latter of normal protection. See Restatement (Second) of Torts §§ 314A, 316-20 (1964). None is analogous to the relationship between Wood Valley and the USTA/MVTA.

Klose cites four Kansas cases. None supports the proposition that either the USTA or the MVTA owes a duty to Klose. In *Durflinger v. Artiles*, 234 Kan. 484, 673 P.2d 86 (1983), the court answered a certified question stating that it would recognize a cause of action against state mental hospital staff physicians' negligent release of a patient. In *McGee v. Chalfant*, 248 Kan. 434, 442, 806 P.2d 980 (1991), the court refused to impose a duty upon a person who transported an intoxicated person to his automobile. In *Thies v. Cooper*, 243 Kan. 149, 150, 753 P.2d 1280 (1988), the court answered the following certified question in the negative:

> "[W]hether, under Kansas law, an employer who makes available free cereal malt beverages in uncontrolled amounts to its employees on the employer's premises may be held liable for all foreseeable consequences of its acts and omissions, including torts committed by employees while driving home from the workplace in an intoxicated condition."

In *Robertson v. City of Topeka*, 231 Kan. 358, Syl. ¶ 2, 644 P.2d 458 (1982), the court held that "the duty of a law enforcement officer to preserve the peace is a duty owed to the public at large, not to a particular individual. Absent some special relationship with or specific duty owed an individual, liability will not lie for damages." No special relationship or duty was found in the circumstances of *Robertson*. Citing a California case, the court observed that a circumstance in which a special relationship or specific duty has been found was where a person *created* a foreseeable peril that *was not readily discoverable* and failed to warn. 231 Kan. at 364. In the present case, the USTA/MVTA did not create the proximity of wall and court, which was an obvious condition.

Klose also cites *Wolfgang v. Mid-American Motorsports, Inc.*, 898 F. Supp. 783, 792 (D. Kan. 1995). The district court found that *Wolfgang* "can be distinguished by the fact that the sanctioning body *admitted to a duty* and *was instrumental in causing the obstruction which led to the accident.*" (Emphasis added.) The district court was of the opinion that *Simpson v. Byron Dragway, Inc.*, 210 Ill. App. 3d 639, 569 N.E.2d 579 (1991), was much more on point. Simpson was killed when his dragster hit a deer during a race at the Dragway. His estate sued the Dragway and the National Hot Rod Association (NHRA). Summary judgment was entered in favor of NHRA on the ground that it neither owned nor controlled the Dragway and therefore did not owe a duty to the plaintiff. 210 Ill. App. 3d at 645-46.

Taking a slightly different approach, Klose argues that USTA and MVTA owe a duty based on Colin's paid membership in the USTA in order to participate in the USTA/MVTA sanctioned tournaments. Klose relies on *Jones v. Gibberd*, 77 N.M. 222, 421 P.2d 436 (1967), a case involving a YWCA-sponsored tour of artists' homes in Taos. Jones bought her ticket for the tour from the YWCA, entered the Gibberd home in a group, heard a warning to watch for steps, and fell into a recessed fireplace while her attention was fixed on a statue to her left. Without stating its reasons, the New Mexico Supreme Court concluded that Jones was a business invitee with reference to the YWCA and that there was a question of fact whether the YWCA had violated its duty as invitor.

77 N.M. at 224. Here, the present case is distinguishable from *Jones* on both its facts and law. Klose's theory of the sanctioning organizations' negligence is a failure to warn of the dangerous condition rather than failure to keep the premises in a reasonably safe condition, which is the basis of premises liability, as applied in *Jones*.

Klose also argues that the doctrine of imputed negligence applies to USTA and MVTA. *Lightner v. Frank*, 240 Kan. 21, 727 P.2d 430 (1986), is the most recent case cited by Klose on this question. *Lightner* involved the collision of two trucks at a rural intersection. The jury found the driver of each truck to be 50% at fault. The jury also found that Dale Lightner, who was a passenger in the truck driven by Jessie Lightner, was engaged in a joint enterprise with Jessie so that her 50% negligence was imputed to him. On appeal, the court discussed the concept of imputed negligence:

"Imputed negligence may bar a plaintiff's recovery, but it does so not from culpability or wrongful act of the plaintiff but from liability for another person's wrongful act. Such responsibility or liability is imposed by reason of the relationship. One such relationship giving rise to imputed negligence is loosely referred to as a joint adventure or joint enterprise." 240 Kan. at 24.

Summing up a discussion of the elements of a joint venture, the court stated: "Stated simply, there must be an understanding or an agreement in advance between the driver and the passenger that the passenger has a right to tell the driver how to drive the automobile." 240 Kan. at 25. Finding no evidence of an agreement of this sort, the court held that the district court erred in instructing the jury on the subject of joint enterprise and submitting the issue to the jury. 240 Kan. at 28.

In *Pizel v. Zuspann*, 247 Kan. 54, 70-71, 795 P.2d 42, *modified* 247 Kan. 699, 803 P.2d 205 (1990), the court considered the application of imputed negligence in a legal malpractice action:

"Although recognizing that the general rule is that the negligent acts of third persons will not be imputed to a plaintiff to bar recovery, Restatement (Second) of Torts § 485 (1964), [cross-appellant] argues that the exception to this general rule for a joint enterprise should be applied to the facts in this case.

"Four basic elements are needed to establish a joint venture that imposes vicarious liability: (1) an agreement; (2) a common purpose; (3) a community of

interest; and (4) an equal right to a voice accompanied by an equal right of control over the instrumentality. *Scott v. McGaugh*, 211 Kan. 323, 327, 506 P.2d 1155 (1973).

"In *Schmidt v. Martin*, 212 Kan. 373, 375-76, 510 P.2d 1244 (1973), this court recognized that the doctrine of imputed negligence has been highly criticized. . . . The court has approved and accepted the doctrine when applied in two special relationships: master-servant and joint enterprise. 212 Kan. at 376. In *Schmidt*, the court had to decide whether to impute the negligence of a custodian of a child to the child's parents as a matter of law based solely on that relationship. 212 Kan. at 376. The court rejected its application, holding that the negligence of a third party in caring for a child at the request of the parent is not, as a matter of law, imputed to the parent. The court pointed out that the only logical basis for the imputation of the negligence of one person to another is the right of the latter to control the acts of the former. 212 Kan. at 378."

As in *Pizel v. Zuspann*, the four basic elements necessary to establish a joint venture to impose vicarious liability on USTA and MVTA do not exist here. In particular, there is no factual basis for believing that USTA and MVTA had control over the physical facility of Wood Valley or had the right to control the acts of Wood Valley. The district court made the following finding of fact: "As owner and operator of the tennis facilities, Wood Valley was in control of the facilities. Although USTA and MVTA may refuse to sanction a tournament, Wood Valley controlled their own premises."

Klose also complains that Wood Valley's pleadings did not include the affirmative defense of the bar of 60-513(b) at the time Wood Valley filed its motion for summary judgment and that the district court abused its discretion in allowing Wood Valley to amend its answer to include the defense. The record reflects that Wood Valley filed its answer in November 1996 and that the statute of limitation was identified as an affirmative defense, but the statute of repose was not. Wood Valley's motion for summary judgment was filed in October 1997, and one of the bases for the motion was that Klose's cause of action is barred by the statute of repose, 60-513(b). The district court granted Wood Valley leave to amend its answer to add the affirmative defense of the statute of repose in December 1997, simultaneously with its granting summary judgment to Wood Valley.

K.S.A. 1998 Supp. 60-215(a) provides that leave shall be freely given by the district court for amending pleadings "when justice so requires." Klose relies on *Clevenger v. Catholic Social Service of the Archdiocese of Kansas City*, 21 Kan. App. 2d 521, 524, 901 P.2d 529 (1995), for

"the proper construction of that statute . . . : 'A trial court is given broad discretionary power under K.S.A. 60-215 to permit or deny the amendment of pleadings, and its actions will not constitute reversible error unless it affirmatively appears that the amendment allowed or denied is so material it affects the substantial rights of the adverse party.' [Citation omitted.]"

Klose contends that Colin's substantial rights were affected by the district court's allowing Wood Valley to plead the affirmative defense of the statute of repose. In particular, Klose believes that Wood Valley should not have been permitted to belatedly add the statute of repose because "Wood Valley was in the unique position of having the information from the very inception of the plaintiff's lawsuit about when its structure had been built." Furthermore, Klose contends, the only access any other party had to the information was through discovery from Wood Valley.

Examination of the record, though, indicates that before Wood Valley's motion for summary judgment was filed, Klose was aware of the year when Wood Valley was built. The motion contains a statement of uncontroverted facts, which includes the following:

"3. The Wood Valley facility was constructed in 1974. The court in question, court number one, has been used by an estimated 123,760 participants including college-level and professional players for over twenty (20) years, with no previous injuries related to contact with the wall. Approximately one-half of the participants noted above were junior players."

Klose's response takes issue with the number of participants, but neither the year of construction nor its being established in the cited discovery documents is questioned.

There is no contention that Wood Valley withheld information or held back its affirmative defense in order to gain some advantage over Klose. In these circumstances, the district court did not abuse its discretion in permitting Wood Valley to amend its answer in order to insert the statute of repose defense.

Klose makes two final contentions. The first seems to be that danger from the proximity of the court and the wall was not an open and obvious condition. The second is that Wood Valley had a duty to protect Colin. Neither is material in light of our conclusions that plaintiff's action against Wood Valley is barred by the statute of repose and that there was no duty for the sanctioning bodies to protect Colin.

The judgment of the district court is affirmed.

SIX, J., not participating.