IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 105,698

DUSKIN L. SIRUTA, by and on behalf of the heirs at law of
TATE DILLON SIRUTA, Deceased,
*Appellant/Cross-appellee*,

v.

MELISSA SIRUTA,
*Appellee/Cross-appellant*.

SYLLABUS BY THE COURT

1.

A wrongful death action under K.S.A. 60-1901 *et seq.* can be brought against an alleged tortfeasor who is an heir at law of the decedent.

2.

Under the facts of this case, a vehicle driver was not entitled to summary judgment or judgment as a matter of law on the issue of negligence where there was circumstantial evidence that could cause reasonable people to disagree on whether the driver deviated from the standard of a prudent driver by becoming drowsy or falling asleep.

3.

A passenger can only be liable for negligence in two situations: (1) where there was a failure to use due care for his or her own safety as a passenger in the automobile or (2) under a joint enterprise or when the passenger and driver had a special relationship which created some duty where the negligence of the driver would be imputed to the passenger.

1

4.

PIK Civ. 4th 121.95 (Duty of Vehicle Passenger) relates only to a passenger's duty to avoid injury to himself or herself. It does not relate to a passenger's duties to other passengers. A passenger is liable for a driver's negligence only if the driver's negligence is imputed to the passenger because the passenger and the driver operated the vehicle as a common enterprise or the passenger and the driver had a special relationship.

5.

Four elements are necessary to establish a joint enterprise such that the driver's negligence may be imputed to the passenger: (1) an agreement, (2) a common purpose, (3) a community of interest, and (4) an equal right to a voice, accompanied by an equal right of control over the automobile.

6.

Generally, unverified interrogatory answers lack evidentiary value.

7.

Under the facts of this case, K.S.A. 2014 Supp. 8-1345(d), which prohibits the admission of evidence of failure to secure a child in a child passenger safety restraining system or a safety belt for the purpose of determining any aspect of comparative negligence or mitigation of damages, did not unconstitutionally deprive the defendant of the right to due process under the Fourteenth Amendment to the United States Constitution.

8.

Under the facts of this case, neither the parental nor the interspousal immunity doctrine is available as a defense.

Review of the judgment of the Court of Appeals in an unpublished opinion dated February 1, 2013. Appeal from Thomas District Court; GLENN D. SCHIFFNER, judge. Opinion filed April 24, 2015. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded.

*Timothy J. King*, of Speth & King, of Wichita, argued the cause, and *Nancy Ogle*, of Ogle Law Office, L.L.C., of Wichita, was with him on the briefs for appellant/cross-appellee.

*Kevin M. McMaster*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause and *Jennifer M. Hill*, of the same firm, was with him on the briefs for appellee/cross-appellant.

The opinion of the court was delivered by

LUCKERT, J.: In this wrongful death action, an heir sues an alleged tortfeasor for the death of a decedent. But this case is not the typical suit brought pursuant to the Kansas Wrongful Death Act, K.S.A. 60-1901 *et seq.*, due to a few unusual iterations: Here a bereaved father sues his wife, the bereaved mother; the two parties are the sole heirs at law of a decedent child; and, to add one more wrinkle, both parties are potential tortfeasors.

On appeal and cross-appeal, both parties raise several issues, which we group and address in the following order. First, the mother contends the father is not legally entitled to bring a wrongful death action against her because the suit is brought on behalf of all the decedent's heirs at law, including the mother, and she cannot be permitted to benefit from her own negligence. Second, she contends she was entitled to either pretrial summary judgment or midtrial judgment as a matter of law on the issue of negligence because there was a lack of evidence supporting her liability. Third, the father argues the district court erred in allowing the jury to compare his negligence, as a mere passenger in a car, to that of the mother, who was the driver of the car at the time it crashed and their

3

son was killed. In four final issues, the mother argues the district court erred in not giving jury instructions on common enterprise, in allowing questions about unsigned interrogatory answers during witness examination at trial, in ruling that K.S.A. 2014 Supp. 8-1345(d) (precluding evidence that a child was not properly secured in a safety restraint system) is not unconstitutional as applied to this case, and by not allowing her to raise the common-law defenses of parental and interspousal immunity.

The Court of Appeals panel unanimously affirmed the district court's rulings denying the pretrial motion for summary judgment and the midtrial motion for judgment as a matter of law. A majority of the panel also affirmed the district court on the jury instruction issues presented by the father and concluded all of the mother's issues were moot because of the jury's determination that the mother and father were equally at fault, which effectively resulted in judgment in her favor. *Siruta v. Siruta*, No. 105,698, 2013 WL 451890, at *3-6 (Kan. App. 2013) (unpublished opinion). One member of the panel dissented, concluding it was error to compare the fault of the father because, as a passenger, the father owed no duty to his son unless the mother's negligence was imputed to him under the joint enterprise doctrine—an option the jury had not been allowed to consider. 2013 WL 451890, at *6-8 (Hill, J., dissenting).

Upon our review of the Court of Appeals decision, we agree with the unanimous panel rulings that the mother was not entitled to summary judgment or judgment as a matter of law. But we reject the majority's holding that it was appropriate to issue instructions allowing the jury to compare the father's fault based on duties he owed to protect himself—rather than his son—from injury. We hold that this error undoubtedly affected the jury's verdict, and we, therefore, reverse the district court and the Court of Appeals and remand this case for further proceedings. We address the remaining issues only to the extent of providing guidance on remand.

FACTUAL AND PROCEDURAL BACKGROUND

We will not belabor the tragic facts, which are more fully explained in the Court of Appeals opinion in this case. See generally *Siruta,* 2013 WL 451890, at *1-2. Tate Dillon Siruta, a 7-year-old child, was killed in a one-car rollover crash just after midnight as his family neared the end of a long trip across Kansas following a wrestling tournament in which Tate had participated. Tate's parents had periodically traded driving duties during the approximately 330 miles the family had traveled. At the time of the crash, Tate's mother, Melissa (Missy) Siruta, was driving, Tate and a friend were asleep in the back seat, and Tate's father, Duskin Siruta, was asleep in the front passenger seat. Due to his small size, Tate slipped under the shoulder restraint and out of the seatbelt during the rollover and was pinned when the passenger door opened. After Tate's death, Duskin brought a wrongful death action against Missy and alleged that Missy's negligence was the proximate cause of Tate's death. Missy and Duskin filed competing motions for summary judgment, both of which the district court denied, and the case proceeded to a jury trial.

At trial, the parties disputed whether Missy fell asleep behind the wheel or was otherwise negligent in causing the accident. Missy had argued in her pleadings and pretrial filings that the accident occurred without any party being negligent, or in the alternative if she was negligent, Duskin was also negligent as a result of their joint driving decisions. But at trial, as noted by the Court of Appeals, the parties' positions on whether negligence should be found was "not entirely adversarial," as Duskin and Missy remained married, and Missy went so far as to say that she did not want the jury to determine no fault and not award damages. 2013 WL 451890, at *3. At the close of Duskin's evidence, Missy moved for judgment as a matter of law (known at the time as a directed verdict), which the district court denied.

The jury found both parties 50% at fault, which, under Kansas comparative negligence law, resulted in a judgment in favor of Missy. See K.S.A. 2014 Supp. 60-258a(a); PIK Civ. 4th 105.01. Duskin appealed on the grounds of erroneous jury instructions, and Missy cross-appealed on different jury instruction grounds and raised several other issues.

The Court of Appeals reached Duskin's jury instruction issues and, finding that the instructions were not issued in error, affirmed the jury verdict. 2013 WL 451890, at *3-6. We granted Duskin's petition for review and Missy's cross-petition for review under K.S.A. 20-3018(b), obtaining jurisdiction under K.S.A. 60-2101(b).

We will first address Missy's arguments regarding the district court's denial of her motions for summary judgment and for judgment as a matter of law, then turn to Duskin's arguments regarding the jury instructions, and, finally, address Missy's remaining arguments.

ANALYSIS

ISSUE 1:  *Action Not Barred Because Missy Is Both a Potential Tortfeasor and Heir at Law*

We begin with whether Duskin may bring this suit at all. Missy contends that he may not and that the district court erred in denying her motion for summary judgment on the basis of this argument.

We review the district court's denial of summary judgment de novo, viewing the facts in the light most favorable to the party opposing summary judgment. See, *e.g.*, *Long v. Turk*, 265 Kan. 855, 865, 962 P.2d 1093 (1998). "Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file,

6

together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Bracken v. Dixon Industries, Inc.*, 272 Kan. 1272, 1274-75, 38 P.3d 679 (2002); see K.S.A. 60-256(c)(2).

In Missy's summary judgment motion, she argued various provisions in the wrongful death act prohibited Duskin's wrongful death action. Sorting out her arguments requires us to resolve issues of law and construe the act. This court applies de novo review and does not grant deference to the district court's legal conclusions and statutory interpretation. *Martin v. Naik*, 297 Kan. 241, 247, 300 P.3d 625 (2013); *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 557, 276 P.3d 188 (2012).

K.S.A. 60-1901 provides that "[i]f the death of a person is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom if the former might have maintained the action had such person lived." If the decedent could have maintained the wrongful death action, the action may be filed "by any one of the heirs at law of the deceased who has sustained a loss by reason of the death." K.S.A. 60-1902; see K.S.A. 60-1904 (listing recoverable damages including, *inter alia*, mental anguish, suffering or bereavement, and reasonable funeral expenses). K.S.A. 60-1902 also provides that a wrongful death action "shall be for the exclusive benefit of all of the heirs who [have] sustained a loss regardless of whether they all join or intervene" in the suit. Each of the heirs, including those who did not join in the wrongful death action, may receive an apportionment of the recovery "in proportion to the loss sustained by each of the heirs." K.S.A. 60-1905.

Here, it is undisputed that Tate might have maintained the suit had he lived, and so there is no initial difficulty under K.S.A. 60-1901. There is also no real dispute that Duskin is a proper plaintiff under K.S.A. 60-1902 because he is one of Tate's heirs at law and he sustained a loss by reason of Tate's death.

7

Missy argues that the district court should have nevertheless barred Duskin's suit. Missy's first point is that she was entitled to summary judgment on Duskin's claim because she is *also* one of Tate's heirs at law, meaning she is both plaintiff and defendant in this action. But nothing in the wrongful death statute requires us to treat Missy as a "plaintiff" in this case solely because she is an heir at law. See K.S.A. 60-1901 *et seq.* In fact, K.S.A. 60-1902 expressly contemplates that some heirs may elect to join a wrongful death action as party-plaintiffs and others may elect not to; Kansas does not require that all heirs join a wrongful death action as necessary or indispensable parties. See K.S.A. 60-219 (regarding compulsory joinder of parties). Thus, while a wrongful death action is "for the exclusive benefit of all of the heirs who [have] sustained a loss," it does not necessarily follow that all the heirs are "plaintiffs" during a civil litigation of fault. K.S.A. 60-1902.

Further, the statutory provisions regarding apportionment of the ultimate award make clear that the "exclusive benefit" language pertains to apportionment of damages. Apportionment must occur *after* the substance of the action has been litigated and damages have been awarded to the named plaintiff(s). See K.S.A. 60-1902; K.S.A. 60-1905. To hold otherwise would render meaningless the language in K.S.A. 60-1902 that the action is for the benefit of the heirs "regardless [of] whether they all join or intervene" in the action. K.S.A. 60-1902; see *Fisher v. Kansas Crime Victims Comp. Bd.*, 280 Kan. 601, 613, 124 P.3d 74 (2005) (referencing "the presumption that the legislature does not intend to enact useless or meaningless legislation" and the courts' "obligation to interpret a statute in such a way that part of it does not become surplusage").

Accordingly, we decline to view Missy as a "plaintiff" in the instant action such that she would necessarily recover damages from herself as the defendant. We do not address what would have happened had Missy sought to join Duskin's action outright as a party plaintiff or had otherwise sought to intervene, as those circumstances are not before

8

us. See K.S.A. 60-1902 (permitting heirs who do not join as a party-plaintiff to intervene).

Missy's second and stronger point is that if Duskin were to succeed and win damages on his own behalf, she would, as an heir, share in Duskin's award, which would impermissibly enable her to profit by her own negligence. See, *e.g.*, *Turner v. Railway Co.*, 106 Kan. 591, 599, 189 Pac. 376 (1920) ("[O]ne party cannot hold the other responsible for an injury which his own carelessness has alone, or with the other's caused."). We ultimately reject this argument for two reasons.

First, we are not convinced that the *potential* for Missy's recovery should prohibit Duskin's suit. A wrongful death action is purely a statutory creation, and the statutory language does not disallow recovery by an heir who has negligently contributed to the death of the decedent. See K.S.A. 60-1901 *et seq.*; *Bonura v. Sifers*, 39 Kan. App. 2d 617, 621, 181 P.3d 1277 (2008) (describing the wrongful death action as a statutory construct). The statute also clearly contemplates that heirs must first assert an interest in the apportionment proceedings before they can receive a portion of the damages recovered by the plaintiff, which further supports our conclusion that the specter of Missy's future recovery should not bar Duskin's suit. See K.S.A. 60-1905. Even if the legislature did not anticipate this scenario at the time it enacted the wrongful death statute, we are still bound by the statutory language as written. See *Johnson v. McArthur*, 226 Kan. 128, 129-32, 135, 596 P.2d 148 (1979) (explaining that K.S.A. 60-1901 *et seq.* is plain and unambiguous, and in such cases courts "must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be").

Second, we are not convinced that the situation Missy describes—where she recovers damages from her own negligence—is the inescapable result of Duskin's suit were he successful. K.S.A. 60-1905 leaves the apportionment decision to the judge, and

9

nothing in the statutory language prohibits the judge from using discretion in calculating the relative "loss" sustained by each of the heirs, especially considering that most of the contemplated "losses" cannot be precisely determined, such as mental anguish and loss of society. See K.S.A. 60-1902; K.S.A. 60-1904; K.S.A. 60-1905; see also *Johnson*, 226 Kan. at 131-32 (explaining that distribution of damages is in proportion to the loss of each heir, rather than by use of an intestacy formula); *cf. Cruse v. Dole*, 155 Kan. 292, 297, 124 P.2d 470 (1942) (explaining that in a wrongful death case brought under an earlier version of the statute using the intestacy formula, where an heir is guilty of contributory negligence, that heir "may not recover and any amount he would otherwise have received is deductible from the amount recoverable by the survivors as a group, the rest being distributed among the survivors as though the [negligent heir] did not exist"). There is nothing preventing a judge from considering any of Missy's actions in causing her own loss or from fashioning an award tailored in some other way to the peculiar facts of this case and the losses sustained by the heirs at law. See *Johnson*, 226 Kan. at 135 (explaining that one of five children, all of whom were a decedent's heirs at law, could receive 100% of the net recovery "if he or she suffered all of the loss"). Accordingly, we do not believe that Missy would necessarily receive, merely because of her status as an heir at law, any portion of the damages she was ordered to pay as a defendant.

Missy's arguments to the contrary are not persuasive, as she primarily relies on cases predating Kansas' shift from contributory negligence to comparative negligence. See, *e.g.*, *Schmidt v. Martin*, 212 Kan. 373, 510 P.2d 1244 (1973); *Turner*, 106 Kan. 591; *Schaefer v. Interurban Railway Co.*, 104 Kan. 394, 179 P. 323 (1919). These cases, and *Schmidt* in particular, recount the rule that "where the death of a minor child results from the contributory negligence of a parent and that of a third person," and where potential recoverable damages "are solely for the benefit of the parent who negligently contributed to the child's death," that parent's "contributory negligence . . . bars him from recovering from the third person on account of the child's death." *Schmidt*, 212 Kan. at 374-75. We

do not decide today whether this rule has any lingering power in light of Kansas' current comparative negligence framework because these cases are distinguishable from Missy's case. For example, here, in addition to there being no question of legal contributory negligence, any recoverable benefits would not be "solely" for the benefit of Missy; Duskin brought the suit and he seeks damages only for himself, Missy is not a party-plaintiff, she is not the only heir at law, and she would have to affirmatively assert her interest in the apportionment of any damages Duskin received.

We affirm the district court's denial of summary judgment on this ground.

ISSUE 2: *Question of Missy's Negligence Is for the Jury*

Missy also argues that the district court erred in denying her motion for summary judgment and her motion for judgment as a matter of law on the basis that there was not sufficient evidence of her negligence for the case to go to the jury.

2.1    *Standard of review and general principles regarding proof of negligence*

As we explained above, we review the district court's denial of a motion for summary judgment de novo, viewing the facts in the light most favorable to the party opposing summary judgment. K.S.A. 2014 Supp. 60-256(c)(2); *Long*, 265 Kan. at 865. If "reasonable minds could differ as to the conclusions drawn from the evidence"—in other words, if there is a genuine issue about a material fact—summary judgment should be denied. *Bracken*, 272 Kan. at 1275. We also review de novo the district court's denial of a motion for a directed verdict (now called a motion for judgment as a matter of law), asking whether evidence existed from which a reasonable jury "could properly find a verdict for the nonmoving party." *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 40, 169 P.3d 1052 (2007) (also explaining that the standard of review for a motion for judgment

11

as a matter of law is the same as the standard previously employed for review of a motion for a directed verdict). Similar to our review of denial of summary judgment, when considering a motion for judgment as a matter of law we '""resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought,"'" and, '""[w]here reasonable minds could reach different conclusions based on the evidence, the motion must be denied."' [Citations omitted.]" *Deal v. Bowman*, 286 Kan. 853, 858, 188 P.3d 941 (2008); see K.S.A. 2014 Supp. 60-250.

Here, we apply these standards to determine whether Duskin presented evidence raising an issue of fact on which reasonable minds could differ. A prima facie case for negligence in a wrongful death negligence action required Duskin to show that Missy owed Tate a duty, she breached that duty, and her breach proximately caused the complained-of injury. See *Yount v. Deibert*, 282 Kan. 619, 623-24, 147 P.3d 1065 (2006). "Whether a duty exists is a question of law." 282 Kan. at 624. Generally, as a matter of law, an automobile driver owes the duty to act as would a reasonably prudent driver. See *Deal*, 286 Kan. at 859. The determination of what a reasonably prudent driver would do under particular circumstances, whether a driver acted in a manner consistent with that standard, and "[w]hether there is a causal connection between the breached duty and the injuries sustained [are] question[s] of fact." *Yount*, 282 Kan. at 624; see *Deal*, 286 Kan. at 858.

"In the vast majority of cases, the question of negligence is a factual determination for the jury, not a legal question for the court." *Deal*, 286 Kan. at 859 (discussing motions for judgment as a matter of law); see, *e.g.*, *Fettke v. City of Wichita*, 264 Kan. 629, 632, 957 P.2d 409 (1998) (summary judgment is to be granted "with caution" in negligence cases). Whether a party breached a duty and was negligent can become a legal question, however, "'when the facts are such that reasonable men must draw the same conclusion

12

from them'" or when "no evidence is presented on a particular issue." *Deal*, 286 Kan. at 858-59; see also *Edwards v. Anderson Engineering, Inc.*, 284 Kan. 892, 904, 166 P.3d 1047 (2007) (stating a defendant is entitled to summary judgment if the plaintiff's claim "'is supported by no evidence indicating negligence'"); *Yount*, 282 Kan. at 623 (explaining that "[s]ummary judgment is proper in a negligence action if the only questions presented are questions of law").

"Negligence must be proved by substantial competent evidence." *Yount*, 282 Kan. at 624 (also asserting that Kansas "does not presume negligence" or allow it to be established "by conjecture, surmise, or speculation"). It is well established that negligence may be proved through circumstantial evidence, however. See, *e.g.*, 282 Kan. at 625; *Hurlbut v. Conoco, Inc.*, 253 Kan. 515, 524, 856 P.2d 1313 (1993). In order for circumstantial evidence to be sufficient to establish negligence, "'such evidence need not rise to that degree of certainty which will exclude any and every other reasonable conclusion'"—instead, "'[i]t suffices that such evidence affords a basis for a reasonable inference by the court or jury,'" even though "'some other inference equally reasonable might be drawn [from the evidence].' [Citation omitted.]" *Kuxhausen v. Tillman Partners*, 291 Kan. 314, 320, 241 P.3d 75 (2010); see also *Casey v. Phillips Pipeline Co.*, 199 Kan. 538, Syl. ¶ 6, 431 P.2d 518 (1967). Triers of fact may also "draw upon their own experiences in determining causation." *Yount*, 282 Kan. at 625.

## 2.2 *Questions of fact were presented for jury determination*

Here, Missy admits that she had a duty to conform to the standard of a reasonably prudent driver. See *Yount*, 282 Kan. at 624 (describing this question as one of law). She argues, however, that she was entitled to summary judgment or judgment as a matter of law because reasonable minds could not differ as to whether she breached her duty of care. She further asserts that, as there was no disputed issue of material fact, breach of

13

duty and causation also became questions of law. See *Deal*, 286 Kan. at 858-89; *Yount*, 282 Kan. at 624. Specifically, she contends that (1) there was no evidence that she fell asleep or breached her duty of care in any way, and (2) even if she had fallen asleep, doing so was as a matter of law not negligent under the circumstances. We disagree on both counts and conclude that both of these questions were properly submitted to the jury.

First, Missy is mistaken when she argues that there was "no evidence" she fell asleep behind the wheel. Duskin did not need conclusive, direct evidence of whether she fell asleep in order to survive her motions for summary judgment and judgment as a matter of law. Circumstantial evidence may be considered "substantial competent evidence" showing negligence. See *Yount*, 282 Kan. at 624-25; *Casey*, 199 Kan. 538, Syl. ¶ 6.

It is true, as Missy points out, that nobody "knows" what occurred immediately prior to the collision, as the passengers were asleep and she does not remember what happened. But Missy herself told the law enforcement officer at the scene that she had probably fallen asleep, a witness who was driving in a car behind Missy observed Missy's car swerve and veer prior to leaving the highway, and of course the accident occurred close to midnight after a very long day and near the end of a long trip. While this circumstantial evidence does not exclude every other reasonable explanation for the crash, the jury could infer, without resorting to pure speculation, that Missy fell asleep behind the wheel. See *Kuxhausen*, 291 Kan. at 320. We do not offer our own opinion on the matter; our point is merely that the district court properly referred this factual question to the jury. See *Deal*, 286 Kan. at 859 (affirming that in the "vast majority" of cases negligence is for the jury to determine).

14

We also reject Missy's second argument, which is that even if she did fall asleep there was no evidence that this constituted negligence, and thus she was entitled to summary judgment or judgment as a matter of law. We are confident that in this case whether falling asleep was negligent was properly submitted to the jury, and we also note that this conclusion is in accord with the law in other jurisdictions. See *Akin v. Estate of Hill*, 201 Kan. 306, 313, 440 P.2d 585 (1968) (stating that, in general, "where the driver of a motor vehicle has become drowsy or has fallen asleep, thus precipitating an accident, the issue of whether he has been guilty of gross and wanton negligence is for the jury to determine"); see also, *e.g.*, *Sutton v. Inland Construction Co.*, 144 Neb. 721, 728, 14 N.W.2d 387 (1944) (stating that "the fact that one falls asleep while driving an automobile constitutes sufficient evidence of negligence to require the question of the driver's negligence to be submitted to the jury"); *Spivak v. Heyward*, 248 App. Div. 2d 58, 60, 679 N.Y.S.2d 156 (1998) (holding that a prima facie showing that the driver fell asleep while driving raises a rebuttable presumption of negligence); *Bernosky v. Greff*, 350 Pa. 59, 60-61, 38 A.2d 35 (1944) (similar).

Missy cites several cases in purported support for her position that the district court erred in denying her motion for summary judgment and motion for judgment as a matter of law, but they actually further emphasize that whether falling asleep constituted negligence is a question of fact for the jury, not a question of law for the court. For example, she cites *Shanley v. Shanley*, 27 Conn. Supp. 417, 241 A.2d 543 (Conn. Super. 1968), for the proposition that falling asleep behind the wheel is not necessarily negligent. But the court in *Shanley* declined to rule on whether going to sleep at the wheel required a conclusive finding of negligence because doing so would be impermissibly "arrogating to itself the role of a trier of facts." 27 Conn. Supp. at 420-21; see also *Diamond State Tel. Co. v. Hunter*, 41 Del. 336, 21 A.2d 286 (Del. Super. 1941) (concluding that whether the driver fell asleep involuntarily was a question of fact for the jury in deciding whether the driver had overcome the presumption that falling asleep was

15

negligent). Another case cited by Missy is easily distinguishable from her situation, as it involved a front-seat passenger who jerked the steering wheel away from the driver as the passenger was waking up. See *Ballew v. Aiello*, 422 S.W.2d 396 (Mo. App. 1967).

Missy also cites to *Schoof v. Byrd*, 197 Kan. 38, 415 P.2d 384 (1966), and she argues that it provides an example of the court relying on factors other than the two at issue here—the driver falling asleep and a resulting accident. She further suggests the decision supports the conclusion that a driver should not be responsible if the driver falls asleep without volition or knowledge of warning circumstances. Missy makes much of testimony that she did not seem fatigued or too tired to drive either to herself or Duskin, but this does not amount to an uncontested fact—one not susceptible to debate among reasonable minds—that if she fell asleep she did so unexpectedly and non-negligently. See, *e.g.*, *Deal*, 286 Kan. at 858; *Bracken*, 272 Kan. at 1275. Indeed, in finding as a matter of law that Schoof's contributory negligence contributed to his automobile accident and resulting injuries, this court focused on the warning signs of Schoof's sleepiness, noting that Schoof "convicted himself of contributory negligence, which was a proximate cause of his injury, by admissions made in his own testimony"—namely, his admissions that he was blurry eyed, that he considered this condition a "pretty good warning" of sleeplessness, and that he thought it was dangerous to keep driving after this warning. 197 Kan. at 42-43, 50, 52.

Nevertheless, *Schoof* does not suggest that a driver who falls asleep without warning is *not* negligent. See generally 197 Kan. 38. If anything, *Schoof* illustrates the amount and type of uncontroverted evidence needed before a court can conclude that the negligence elements of breach of duty and causation have become questions of law. See 197 Kan. at 42-43, 50. Missy's case does not involve such uncontroverted evidence; her case is much more like the "vast majority" of negligence cases in which the jury must

16

decide whether there has been a breach of duty that caused the plaintiff's injuries. See *Deal*, 286 Kan. at 859.

In other words, to the extent Missy argues that unexpectedly falling asleep while driving is "not necessarily" negligent, well, that is the point: It may not necessarily be negligent, but it is not as a matter of Kansas law *not* negligent, either. It is precisely because the question could be resolved either way that the jury needed to weigh all of the evidence and circumstances and determine, as a factual matter, whether Missy fell asleep and, if she did, whether she deviated from the conduct of a reasonably prudent driver. See *Deal*, 286 Kan. at 859. Simply put, the jury could have concluded that Missy did not act as a reasonably prudent driver. See *Kuxhausen*, 291 Kan. at 320; *Deal*, 286 Kan. at 859. Accordingly, assuming Missy fell asleep, whether this constituted negligence was a disputed issue of fact that was properly given to the jury to decide.

As a result, we affirm the district court's denial of Missy's motion for summary judgment and motion for a directed verdict on the grounds that Missy's negligence was a question of fact for the jury.

ISSUE 3: *Duskin's Comparative Negligence Jury Instruction Issues*

We now arrive at the pivotal issue in this appeal: Duskin's assertion that the district court erred in instructing the jury to compare his fault to that of Missy's. Duskin also asserts that the district court erred by declining to instruct the jury that Missy's negligence could not be imputed to Duskin. We agree that the district court erred in instructing the jury on comparative fault.

17

### 3.1    *Framework for analyzing jury instruction issues*

When analyzing jury instruction issues, we (1) determine whether the issue can be reviewed, (2) determine whether any error occurred, and (3) finally determine whether the error requires reversal. See *State v. Williams*, 295 Kan. 506, 515-16, 286 P.3d 195 (2012); see also *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012) (explaining that "reviewability" must be considered from both jurisdiction and preservation standpoints, though only preservation is relevant in Duskin's suit).

The first and third steps are interrelated in that whether a party has preserved an issue for review will impact the standard by which we determine whether any error is reversible. See *Williams*, 295 Kan. at 515-16. If a party preserves a jury instruction issue by raising an appropriate argument before the district court, there are no reviewability problems:  We will determine whether there was an error and, if so, ask whether it was "harmless." *Plummer*, 295 Kan. at 162; see *Williams*, 295 Kan. at 518; see also K.S.A. 60-261. This means that for preserved jury instruction issues we will reverse "if there is a reasonable probability that the error will or did affect the outcome of the trial in light of the entire record." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012); see *Plummer*, 295 Kan. at 168; see also *Williams*, 295 Kan. at 516 (explaining that the burden to show harmlessness shifts to the party benefitting from the error).

If, on the other hand, a party fails to preserve an objection to the jury instructions by not raising the argument before the district court, we will still review whether the instruction was legally and factually appropriate but will reverse only for "clear error." *Williams*, 295 Kan. at 510, 516. "'An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility that the jury would have returned a different verdict.'" *Hawkinson v. Bennett*,

265 Kan. 564, 581, 962 P.2d 445 (1998); see *Williams*, 295 Kan. at 516 (explaining that the burden to show clear error remains on the party seeking reversal).

### 3.2 *Preservation*

Turning to Duskin's arguments, we first ask whether any of the alleged errors were preserved. *Williams*, 295 Kan. at 515; *Plummer*, 295 Kan. at 163. Before us, Duskin claims three of the jury instructions were erroneous and a fourth instruction, which he had proposed, was omitted in error. One of the three contested instructions—Instruction 13, which tracked the language of PIK Civ. 4th 121.95 (Duty of Vehicle Passenger)— delineated a passenger's duty to "avoid injury to himself." The two other disputed instructions dealt with comparative fault. Instruction 14, which corresponded to PIK Civ. 4th 105.01 (Comparative Fault Theory and Effect), explained the theory of comparative fault and informed the jury that it "must decide this case by comparing the fault of the parties." Instruction 15, which corresponded to PIK Civ. 4th 105.03 (Comparative Fault—Explanation of Verdict), permitted the jury to assign fault to Duskin and/or Missy. Duskin's proposed instruction—Proposed Instruction 1—follows PIK Civ. 4th 121.94 (Negligence of Driver Not Imputed to Passenger).

Duskin properly preserved his appellate arguments by objecting to Instructions 14 and 15, and requesting Proposed Instruction 1. Consequently, we will reverse if there is error related to the Instructions 14 or 15 or Proposed Instruction 1 and if there is a reasonable probability that the error affected the outcome of the trial in light of the entire record. *Williams*, 295 Kan. at 516; *Plummer*, 295 Kan. at 162; *Ward*, 292 Kan. at 569.

Preservation issues plague Duskin's arguments regarding Instruction 13, however. Duskin voiced no objection to Instruction 13 in the district court. In fact, Duskin proposed the instruction, along with Missy, and arguably invited any error regarding

19

Instruction 13. See *Secretary of Kansas Dept. of Transportation v. Underwood Equipment, Inc*., 273 Kan. 453, 456, 44 P.3d 439 (2002) ("'On appellate review, a party may not complain of rulings or matters to which it consented or take advantage of error that it invited or in which it participated.' [Citation omitted.]"); see also *State v. Hargrove*, 48 Kan. App. 2d 522, 531, 293 P.3d 787 (2013) (noting the "long-standing rule" that "parties cannot complain to an appellate court about their own conduct at trial—or that of their lawyers—or about rulings they have asked [or invited] a judge to make," a rule that applies to jury instructions).

Moreover, while Duskin argued in his brief to the Court of Appeals that there was no basis for comparing his fault to Missy's and in doing so discussed Instruction 13, he did not specifically attack Instruction 13 until his petition seeking this court's review of the Court of Appeals opinion. In his petition, he urged us to adopt Judge Hill's dissent, which pointed out the error in giving Instruction 13. *Siruta v. Siruta*, No. 105,698, 2013 WL 451890, at *6-8 (Kan. App. 2013) (unpublished opinion) (Hill, J., dissenting). This raises a question of whether Duskin sufficiently briefed the issue before the Court of Appeals to preserve it for appellate consideration. See Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 41) (appellant's brief must include the "arguments and authorities relied on"); *State v. Bowen*, 299 Kan. 339, 355, 323 P.3d 853 (2014) ("When a litigant fails to adequately brief an issue it is deemed abandoned."). The Court of Appeals panel recognized that Duskin's arguments regarding Instructions 14 and 15 implicated Instruction 13. And it apparently believed Duskin raised the issue because it is so intertwined with his objections to Instructions 14 and 15. In fact, in discussing Instruction 13's propriety, the majority noted it "is the legal predicate that compels the giving of the comparative fault instructions." *Siruta*, 2013 WL 451890, at *6.

As the Court of Appeals suggests, Duskin has avoided the harsh application of the invited error doctrine and the general rule that a party waives an argument by failing to

20

brief it. Duskin's objection to Instructions 14 and 15, which preserved the real substance of his argument regarding the comparative fault instructions, suggests he inadvertently invited error by proposing Instruction 13. Consequently, we will not treat his mistake as a bar to review under the invited error doctrine. See *State v. Divine*, 291 Kan. 738, 742, 246 P.3d 692 (2011) (explaining that a party may not invite error and then complain of that error on appeal); *Hargrove*, 48 Kan. App. 2d at 550-51 (invited error does not generally apply to a clearly inadvertent mistake or when a litigant does not fully comprehend the exact error at issue). Our conclusion is bolstered by the fact that Duskin preserved his argument regarding Proposed Instruction 1, which should be given if Instruction 13 is given. See PIK Civ. 4th 121.94, 121.95. In effect, he objected to and briefed this grouping of related instructions. Also, he is not seeking to advance an entirely new legal theory on appeal.

Accordingly, we will permit Duskin to raise his argument that Instruction 13 was inappropriate. However, because he did not assert a specific objection to Instruction 13, we will reverse only if we find that there has been clear error, meaning that we are able to reach a firm conviction that had the error not occurred there was a real possibility the jury would have returned a different verdict. See *Williams*, 295 Kan. at 516; *Hawkinson*, 265 Kan. at 581.

### 3.3  *Legal and factual basis for the comparative fault instructions*

We now turn to the question of whether the district court erred in allowing the jury to compare Duskin's negligence. We use an unlimited review to determine whether an instruction was legally appropriate, and we also look to whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. *Williams*, 295 Kan. at 515-16, 518; *Plummer*, 295 Kan. at 161-62 (utilizing a four-step review of jury instructions, in which the second and

third step ask whether any error occurred). For instructions that were actually given, we "consider[] the instructions as a whole without isolating any one instruction," and we "review[] the instruction to see whether it properly and fairly stated the law as applied to the facts of the case and could not have reasonably misled the jury." *State v. Horton*, 300 Kan. 477, 491, 331 P.3d 752 (2014).

There is no genuine dispute as to whether these instructions accurately state the law they reflect; the question is whether the instructions were legally appropriate or factually supported in this particular case. Duskin's arguments relate to his duty as a passenger, whether he owed a duty to Tate, and, if so, whether that duty was breached.

In considering these arguments, we stress, at the outset, a point that has often been lost in this litigation and appeal—the ultimate questions the jury was asked to decide were whether anyone's negligence caused Tate's death and, if so, whose. This means that Duskin's negligence can only be compared if he can be legally responsible for Tate's death. See K.S.A. 60-258a; *McCart v. Muir*, 230 Kan. 618, 630-31, 641 P.2d 384 (1982) ("In applying the comparative negligence statute . . . in an action for death by wrongful act . . . the percentage of causal fault attributable to decedent's negligence *plus the percentage of additional causal fault attributable to any direct negligence of the plaintiff* are to be deducted from the amount of damages awarded." [Emphasis added.]).

For Missy to establish Duskin's responsibility, she must establish a prima facie case of negligence against Duskin. As with all negligence cases, Missy's burden begins with her obligation to establish that Duskin owed a duty to Tate, a fellow passenger. See *Yount*, 282 Kan. at 623-24. When speaking of a passenger's duty under Kansas law, we have stated: "[A] passenger can only be liable for negligence in two situations: (1) where there was a failure to use due care *for his or her own safety* as a passenger in the automobile [or] (2) under a joint enterprise or when the passenger and driver had a

22

special relationship which created some duty where the negligence of the driver would be imputed to the passenger." (Emphasis added.) *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 286, 899 P.2d 1058 (1995) (citing *Akins v. Hamblin*, 237 Kan. 742, Syl. ¶ 2, 703 P.2d 771 [1985]).

The first of these circumstances arises from Duskin's duty to himself—a duty to use due care for his own safety. *Kindel*, 258 Kan. at 286. Logically, if Duskin had protected himself from potential injury he would have indirectly protected Tate. But that does not mean he owed Tate a duty as a matter of law. In fact, this court has specifically stated that the first situation—a passenger's duty to protect himself or herself—does not impose upon the passenger a legal duty to other passengers unless one of the circumstances in the second situation—the existence of either a special duty or a joint enterprise—also applies. *Akins*, 237 Kan. at 744-45.

Missy has not alleged that there was a special relationship between her and Duskin that would allow her negligence to be imputed to him. See 237 Kan. at 746-47 (discussing special relationship theories that might give rise to passenger's liability; citing Restatement [Second] of Torts § 315 [1964]). Instead, she has focused on Duskin's vicarious liability for her negligence as a driver that would be imputed to Duskin under the joint enterprise theory. See *Scott v. McGaugh*, 211 Kan. 323, 326, 506 P.2d 1155 (1973). But the district court refused to give the joint enterprise instruction.

As a result, the only theory the jury had to consider in this case for Duskin's possible negligence was based on Duskin's duty to himself. In instructing the jury on Duskin's duty to himself, the district court and, later, the Court of Appeals majority, failed to distinguish between Duskin's duty to a fellow passenger and Duskin's duty to himself. Here, Duskin's duty to himself was not an issue because Duskin made no claim for his own bodily injury, only for his losses deriving from Tate's death. See K.S.A. 60-

23

1902 (permitting an heir "who has sustained a loss by reason of the death" to bring a wrongful death action).

### 3.4 *Applying these principles to the instructions*

Jury Instruction 13 explained to the jury Duskin's duty to protect himself. Instruction 13 tracks the language of PIK Civ. 4th 121.95 (Duty of Vehicle Passenger):

> "If a passenger has knowledge of danger and the circumstances are such that an ordinary person would speak out or take other positive action to avoid *injury to himself*, then it is his duty to do what the ordinary person would do under the circumstances. Unless such knowledge and circumstances exist, he may rely upon the driver to attend to the operation of the vehicle." (Emphasis added.) PIK Civ. 4th 121.95.

The Notes on Use for this instruction explain that it "is to be used when the claim of the passenger is against a wrongdoer *other than his own driver*." (Emphasis added.) PIK Civ. 4th 121.95, Notes on Use. And this court has stated that this instruction "applies *only* where there is a question as to the duty the passenger owes to himself," not to another passenger. (Emphasis added.) *Akins*, 237 Kan. at 745 (citing PIK Civ. 2d 8.91, which is functionally identical to PIK Civ. 4th 121.95).

Cases applying PIK Civ. 4th 121.95 (Instruction 13) and the Notes on Use illustrate the difference between the duty to self—*i.e.*, the duty Duskin would have had to protect himself from negligence—versus the duty of one passenger to his or her fellow passengers—*i.e.*, Duskin's duty to Tate. The first scenario typically arises after a two-vehicle crash in which an injured passenger in Vehicle 1 sues the driver of Vehicle 2, and the injured passenger's duty of care to himself or herself becomes an issue (say, the driver of Vehicle 2 asserts that the passenger clearly perceived a danger posed by Vehicle 2 but failed to warn his own driver). See *Toumberlin v. Haas*, 236 Kan. 138, 689 P.2d 808

24

(1984) (driver and passenger together sued another driver and a county entity); *Smith v. Union Pacific Railroad Co.*, 222 Kan. 303, 564 P.2d 514 (1977) (passenger sued the railroad when she was injured after her car was struck by a train); *Curtiss v. Fahle*, 157 Kan. 226, 139 P.2d 827 (1943) (passenger filed a personal injury claim after the vehicle in which he was riding collided with a truck).

In such a case, if the jury concludes that the driver in Vehicle 2 breached his or her duty as a driver but that the passenger in Vehicle 1 also breached his or her duty of self-care (and assuming that the jury also concludes that both parties' breaches proximately caused the passenger's injuries), then the jury must compare the fault of the passenger and the driver to determine whether the passenger is entitled to an award. In this scenario, PIK Civ. 4th 121.95 (Instruction 13), PIK Civ. 4th 105.01 (Instruction 14), and PIK Civ. 4th 105.03 (Instruction 15) would be appropriate. PIK Civ. 4th 121.95 (Instruction 13) informs the jury about what the passenger's duty entails, and PIK Civ. 4th 105.01 and 105.03 (Instructions 14 and 15) explain how the jury is to compare fault. PIK Civ. 4th 121.94 (Proposed Instruction 1) should be given as well, as any negligence of the driver in Vehicle 2 should not be imputed to the passenger in Vehicle 1; rather the question is whether the passenger breached his or her duty protect himself or herself. See PIK Civ. 4th 121.94, Notes on Use.

On the other hand, if the question is *not* whether the passenger breached his or her duty to protect himself or herself, PIK Civ. 4th 121.95 (Instruction 13) should not be given because the narrow subject of that instruction—a passenger's duty to himself or herself—is not relevant. See *Akins*, 237 Kan. at 745. And if there is no duty, "a person cannot be at fault and therefore cannot be made a party subject to having his negligence compared." 237 Kan. at 749.

As we have noted, Duskin's duty to himself is not at issue in this case. Put simply, Instruction 13, together with Instructions 14 and 15, informed the jury about the wrong duty and then instructed the jury to compare any negligence for Duskin's failure to protect himself with Missy's negligence that caused Tate's death. See, *e.g.*, *Akins*, 237 Kan. at 745, 749.

In reaching the opposite conclusion about the comparative negligence instructions given to the jury, the Court of Appeals majority did not account for the language in PIK Civ. 4th 121.95 (Instruction 13) limiting the duty it outlined to situations where a passenger should act to "avoid injury to himself." Further, the majority did not discuss the Notes on Use to PIK Civ. 4th 121.95 (Instruction 13), which limits the instruction to a passenger's claims against someone other than his or her own driver. *Siruta*, 2013 WL 451890, at *6. The Court of Appeals majority did cite an old case predating the adoption of comparative fault in which this court held that there was a question of fact concerning a sleeping passenger's negligence in a personal injury case. See 2013 WL 451890, at *4-5; *Howse v. Weinrich*, 133 Kan. 132, 135, 298 P. 766 (1931). Despite the reliance on contributory negligence, this case might have been relevant had Tate's own negligence been at issue, or if Duskin was bringing a suit that implicated his duty to protect himself. But the case bears no relevance to Duskin's wrongful death suit and whether he owed and breached a duty to Tate. For the same reason, the Court of Appeals majority misplaced its reliance on *Smith*, another personal injury case, and on personal injury cases from other jurisdictions. See *Siruta*, 2013 WL 451890, at *5-6; *Smith*, 222 Kan. 303. To the extent that the Court of Appeals relied on *Sledge v. Continental Cas. Co.*, 639 So. 2d 805 (La. App. 1994), we decline to afford this case controlling weight because, although the facts of *Sledge* are similar to the instant case, the law of Louisiana regarding passenger negligence is far more expansive than that of Kansas. *Compare* 639 So. 2d at 813, *with Kindel*, 258 Kan. at 286.

26

Under Kansas law, Instruction 13 should not have been given in this case. And as Instruction 13 falls, so must Instructions 14 and 15: They could only apply to instances where the passenger is alleged to have breached his or her duty to himself or herself. If the issue is whether a passenger owed a duty to *another*, it is not comparative fault principles but the theory of imputed negligence that is relevant. See *Lightner v. Frank*, 240 Kan. 21, 24, 727 P.2d 430 (1986) (stating that imputed negligence may bar a plaintiff's recovery "not from culpability or wrongful act of the plaintiff but from liability for another person's wrongful act," which explains why comparative fault instructions would not be appropriate for a joint enterprise issue); *Akins*, 237 Kan. at 745, 749; see also *Scott*, 211 Kan. at 326 (explaining that imputed negligence entirely bars a plaintiff's recovery). Accordingly, we conclude that Instructions 14 and 15 were also issued in error.

The errors regarding Instructions 13, 14, and 15 require reversal under any standard of review because these instructions were the only passenger negligence theory presented to the jury and the jury found Duskin 50% at fault for the accident. Thus, applying the clearly erroneous standard, we reverse the jury's verdict because we are firmly convinced that the error of allowing Duskin's negligence to be compared to Missy's undoubtedly affected the verdict. See *Williams*, 295 Kan. at 516; *Ward*, 292 Kan. at 569; *Hawkinson*, 265 Kan. at 581. This holding means that Duskin's arguments about Proposed Instruction 1 are moot.

ISSUE 4: *What Guidance on Remand Is Necessary on Missy's Remaining Issues?*

Missy raises three additional arguments: (1) The district court erred in not giving instructions on joint enterprise; (2) the district court erred in allowing Duskin's attorney to question her about interrogatory answers she did not sign; (3) the district court erred in ruling that K.S.A. 8-1345(d) (precluding evidence that a child was not properly secured

27

in a safety restraint system) is not unconstitutional as applied to this case; and (4) the district court erred when it did not allow her to raise the common-law defenses of parental and interspousal immunity.

The outcome of these issues does not impact the course of this appeal. Nevertheless, because each of those issues is likely to arise again on remand, we discuss each briefly in order to provide guidance to the district court and the parties. See *Sierra Club v. Moser*, 298 Kan. 22, 62, 310 P.3d 360 (2013) (recognizing this court may discuss issues to provide guidance on remand).

### 4.1 *Joint enterprise instructions*

Missy's Proposed Instructions 2 and 3 would have informed the jury that Missy's negligence could have been imputed to Duskin if Missy and Duskin were operating the vehicle in a joint enterprise. They also defined the elements of a joint enterprise. The proposed instructions conformed to Kansas law on imputed negligence and joint enterprise liability. The question is whether the instructions were legally and factually appropriate in this case.

As the proposed instructions would have informed the jury, four elements are necessary to establish a joint enterprise such that the driver's negligence may be imputed to the passenger: "(1) an agreement, (2) a common purpose, (3) a community of interest and (4) an equal right to a voice, accompanied by an equal right of control over the instrumentality (the automobile)." *Scott,* 211 Kan. at 327; see *Lightner*, 240 Kan. at 24-25; see also *Cullip v. Domann*, 266 Kan. 550, 557, 972 P.2d 776 (1999) (explaining that "the elements of joint ventures and joint enterprises are essentially the same, with the distinction that joint ventures apply to business ventures while joint enterprises do not").

28

Regarding the fourth element, "the essential question is whether, under the facts and circumstances, there is an *understanding* between the parties that [the passenger] has the right and is possessed of equal authority to prescribe conditions of use and operation." (Emphasis added.) *Schmid v. Eslick*, 181 Kan. 997, Syl. ¶ 4, 317 P.2d 459 (1957). We refer to this as the "right of control" test, and we have explained it as follows: "Stated simply, there must be an understanding or an agreement in advance between the driver and the passenger that the passenger has a right to tell the driver how to drive the automobile." *Lightner*, 240 Kan. at 25. The key is thus the existence of an agreement, and the subject of the agreement must be "equal privilege and right to direct and control [the vehicle's] operations." 240 Kan. at 25; see also *Schmid*, 181 Kan. at 1003 (stating it is "clear that in the ordinary and accepted affairs of men, the 'control' of an automobile which is ascribed to a passenger in applying the doctrine of joint enterprise, often is too obviously a fiction upon which is erected a second fiction that the driver is his agent").

The right of control of a vehicle distinguishes a joint adventure, which does not result in imputed liability, and a joint venture, which does. See *Lightner*, 240 Kan. at 25; see also *Scott*, 211 Kan. at 327 (right of control "may not be required to carry out the common purpose in some joint adventures, since mutual use and operation of an automobile may not be considered necessary to carry on the joint adventure"); *Schmid*, 181 Kan. at 1002-03 (passenger and driver on joint adventure do not agree to a "right to control," and, as a result, there is no joint enterprise). A joint adventure—as opposed to a joint enterprise—involves "mere association of persons riding together in an automobile, having a common purpose in making a trip and a common destination." *Schmid*, 181 Kan. at 1002; see also 181 Kan. at 1003 (cautioning against applying joint enterprise liability in situations "which are in fact only matters of friendly or social co-operation and accommodation"); *Schmid*, 181 Kan. at 1004 (reviewing Kansas cases rejecting, as joint enterprises, "companions going on a hunting trip with the passengers paying the expenses"; "members of a family going to visit a relative at the solicitation or request of a

29

passenger"; "passengers returning from a concert"; "a son and father traveling together to seek work, sharing expenses"; and "delegates of a fraternal organization traveling together to a state convention and sharing expenses").

In *Lightner*, the existence of a joint enterprise between a driving wife and a passenger husband was at issue, but the only evidence on that particular subject was from a family member, who testified that the husband did not tell the wife how to drive, where to drive, or how fast to drive. 240 Kan. at 27. This court stated that the record was "completely lacking in any testimony whatsoever that there was any agreement or understanding . . . that [the husband] had the right to control [the wife's] operation of an automobile." 240 Kan. at 27. Accordingly, this court held "as a matter of law that there is no substantial competent evidence in the record to establish . . . a joint enterprise at the time of the accident." 240 Kan. at 28 (continuing on to conclude the district court had erred in instructing the jury about joint enterprise and in permitting the jury to consider this theory of negligence).

An arguably stronger case of joint enterprise was presented to a jury in *Kelty v. Best Cabs, Inc.*, 206 Kan. 654, 481 P.2d 980 (1971). There, the driver and the passenger were in business together and worked together, the business records were kept jointly, the income went into a joint account and joint tax returns were filed, the title to the car involved in the accident was also held jointly, and the accident occurred on the way to work. While these facts supported giving the jury joint enterprise instructions, the jury ultimately concluded that there was no joint enterprise. This court declined to overturn the verdict, as even though the facts indicated joint enterprise they did not establish joint enterprise as a matter of law. 206 Kan. at 660; see *Scott*, 211 Kan. at 330.

On the other hand, a jury—properly instructed on a joint enterprise theory—did find a joint enterprise in *Howard v. Zimmerman*, 120 Kan. 77, 242 Pac. 131 (1926). That

30

case involved two young men who borrowed a car in order to drive around. On the outgoing journey, one young man (the defendant) drove from home to the midpoint, and the other young man drove from the midpoint to the destination. On the way back, the defendant drove from the destination to the midpoint, and the other young man drove from the midpoint back home, during which leg of the journey the car struck a horse and buggy driven by the plaintiff.

On appeal, this court first rejected the argument that the district court should have resolved the joint enterprise issue as a matter of law, noting the argument was based on disputed evidence regarding the extent of control exercised by the two young men. But, upon review of the evidence, this court upheld the jury's verdict, concluding there was substantial competent evidence to support the jury's conclusion that there was a joint enterprise: The two young men borrowed the car, and neither was a guest of the other or a mere passenger while the other was driving; and each had "equal authority" to say in which direction they would drive and how long they would spend at their destination, how the driving should be divided, and how frequently they should change drivers. 120 Kan. at 79. In essence, "[e]ach one had equal authority over manipulation of the instrumentality by which the undertaking was to be accomplished, and, as a matter necessarily involved, had equal authority with respect to speed." 120 Kan. at 79-80. This court has subsequently clarified that *Howard* involved an "understanding" between the two men that each had the right of equal authority to prescribe conditions, use, and operations of the car. *Schmid*, 181 Kan. at 1003-04.

At first glance, *Howard* contains similar facts to the driving situation at issue in the instant case—two individuals trading driving duties during a common trip where both parties shared the same claim to the vehicle. See *Howard*, 120 Kan. at 77-80. Like the two men in *Howard*, Missy and Duskin shared a "community of interest" and had a "common purpose" as the two drivers participating in the trip across Kansas. The two

men in *Howard*, however, also had a prior understanding or agreement that each of them had the right of control, meaning that each could dictate the other's use of the car. See 120 Kan. at 79-80; *Schmid*, 181 Kan. at 1003-04. Here, Missy did not present any evidence that she and Duskin had agreed that each had a mutual and equal right of control over the car. See *Scott*, 211 Kan. at 327; *Schmid*, 181 Kan. at 1003.

While Missy and Duskin may have had a vague understanding that they would trade off driving shifts, this does not amount to an understanding that each party "has the right and is possessed of equal authority to prescribe conditions of use and operation." *Schmid*, 181 Kan. 997, Syl. ¶ 4. There is no evidence, for example, that Missy and Duskin agreed that one could tell the other "how to drive the automobile" or that such orders would be followed. See *Lightner*, 240 Kan. at 25, 27 (looking to whether there was testimony that showed the husband and wife agreed that the husband had the right to control the wife's operation of the car). In fact, Missy testified that Duskin did not make her drive when she did not want to or drive when she was too tired. Missy's attorney elicited testimony from Duskin that neither he nor Missy could command the other "to do X, Y or Z." Missy also testified that she and Duskin would only ask each other if the other party wanted to drive; Missy points to no testimony that one could prescribe the other's use or operation of the car. In other words, while there may have been a casual arrangement about driving between Missy and Duskin in order to facilitate a common purpose (like in most family outings involving multiple drivers), there was no evidence of an agreement that each party would be able to prescribe the manner in which the other drove the car. See *Lightner*, 240 Kan. at 25, 27.

A joint enterprise does not exist absent this mutual right of control. Missy's and Duskin's situation was, instead, a "mere association of persons riding together in an automobile having a common purpose in making a trip and a common destination." See 240 Kan. at 25; see also *Scott*, 211 Kan. at 327 (explaining that mutual right of control is

32

not automatically present when there is a common purpose). Their situation was thus like the various car pools and rideshares that we have found did not show a joint enterprise. See, *e.g.*, *Scott*, 211 Kan. at 328-31.

Accordingly, unless different evidence is presented on retrial, we conclude that there was not sufficient evidence, viewed in the light most favorable to Missy, that would support giving a joint enterprise instruction. See *Scott*, 211 Kan. at 331 (explaining that if the facts clearly show a passenger does not have a right to control, all of the elements of joint enterprise are, as a matter of law, not established).

### 4.2. *Unsigned interrogatories*

Missy also claims that the district court erred in allowing Duskin's attorney to question her, on direct examination, about her unsigned interrogatory answers.

As Missy points out, K.S.A. 2014 Supp. 60-233 requires that "[t]he person who makes the answers [to interrogatories] must sign them, and the attorney who objects must sign any objections." K.S.A. 2014 Supp. 60-233(b)(5). Generally, unverified interrogatory answers lack evidentiary value. See *Tesco Corp. v. Weatherford Intern., Inc.*, 904 F. Supp. 2d 622, 636 (S.D. Tex. 2012) (verified or sworn pleadings are competent summary judgment evidence, but unverified answers to interrogatories and interrogatories not based on personal knowledge are not); *Brady v. Blue Cross and Blue Shield*, 767 F. Supp. 131, 135 (N.D. Tex. 1991) ("The court has been unable to locate a case . . . in which unsworn, unverified interrogatory answers proffered by a nonmovant have been considered competent summary judgment evidence.").

Duskin has not cited any authority suggesting the use of the interrogatories was appropriate. Instead he notes that Missy served the interrogatories as if verified and they

should therefore be treated as such. On remand, if the interrogatory answers are to be used, the parties should develop a more complete record regarding whether the use of the answers would be appropriate as a discovery sanction or develop some other foundation for their use. See K.S.A. 2014 Supp. 60-237(d).

### 4.3. *K.S.A. 8-1345(d)*

Missy was prohibited from admitting evidence that Tate was not in a child seat because of K.S.A. 8-1345(d). Because of this, she contends that K.S.A. 8-1345(d) is unconstitutional as applied to her case, a point she raised before the district court to preserve the issue for appeal. She generally asserts that the statute infringes on her right to due process under the Fourteenth Amendment to the United States Constitution, in that it denied her a full and fair trial on the issue of comparative negligence.

We review questions involving the constitutionality of statutes de novo. *Miller v. Johnson*, 295 Kan. 636, 647, 289 P.3d 1098 (2012). Appellate courts presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. *State v. Seward*, 296 Kan. 979, 981, 297 P.3d 272 (2013); see also *Rural Water District No. 2 v. City of Louisberg*, 288 Kan. 811, 817, 207 P.3d 1055 (2009).

K.S.A. 8-1345(d) prohibits the admission of "[e]vidence of failure to secure a child in a child passenger safety restraining system or a safety belt" for the "purpose of determining any aspect of comparative negligence or mitigation of damages." See *Kansas State Bank & Tr. Co. v. Specialized Transportation Services, Inc.*, 249 Kan. 348, 386, 819 P.2d 587 (1991) (discussing the passage of this provision). We have not expressly addressed the constitutionality of K.S.A. 8-1345(d), but we have discussed this provision with approval. See *Watkins v. Hartsock*, 245 Kan. 756, 757-58, 764-65, 783 P.2d 1293 (1989) (holding that evidence of misuse of a child safety restraint system, like evidence

34

of nonuse, is inadmissible for purposes of determining comparative negligence or mitigation of damages and explaining that the statutory rule as well as the common law would prohibit this evidence).

Here, Missy has offered no real argument as to why, given our opinion in *Watkins* that K.S.A. 8-1345 applies the common-law rule for determining negligence, the legislature has abrogated her right to a fair trial by enacting K.S.A. 8-1345. See *Bonin v. Vannaman*, 261 Kan. 199, 217, 929 P.2d 754 (1996); *Watkins*, 245 Kan. at 757. We are not inclined to provide any such arguments for her. See *McKissick v. Frye*, 255 Kan. 566, 578, 876 P.2d 1371 (1994) ("A point incidentally raised but not argued is deemed abandoned.").

The legislature specifically precluded evidence of failure to secure a child in a safety restraint system in certain actions by statute, and this statute is a pronouncement of legislative policy respecting negligence. See *Kansas Human Rights Comm'n v. Topeka Golf Ass'n*, 18 Kan. App. 2d 581, 593, 856 P.2d 515 (1993), *aff'd* 254 Kan. 767, 869 P.2d 631 (1994) (providing that the legislature, and not the courts, have the authority to declare public policy for Kansas). She attacks this legislative judgment by arguing that "keeping information from the finder of fact renders an unfair result," but she cites no legal support for her position that the legislature's public policy pronouncement—one this court found to be consistent with common law—is constitutionally infirm as applied to her.

Hence, we hold that, under the facts of this case, K.S.A. 8-1345(d) did not unconstitutionally deprive Missy of her right to due process under the Fourteenth Amendment to the United States Constitution.

### 4.4 *Parental and interspousal immunity*

Before the district court, Missy recognized Kansas caselaw generally prohibits the assertion of the defenses of parental and interspousal immunity. See *Nocktonick v. Nocktonick*, 227 Kan. 758, 759-70, 611 P.2d 135 (1980) (rejecting application of the parental immunity doctrine in Kansas after thoroughly investigating its general history as well as the justifications and exceptions adopted by other states); *Flagg v. Loy*, 241 Kan. 216, 217-19, 224, 734 P.2d 1183 (1987) (abrogating the interpsousal immunity doctrine because, *inter alia*, the "legal fiction of the unity of husband and wife" was no longer recognized). Yet, she asserted the defenses for the purposes of preserving several arguments for appeal. Now she asks us to reconsider whether these common-law defenses have a place in Kansas law. But she presents no arguments as to why our decisions in *Nocktonick* and *Flagg* were infirm. Instead she asserts some additional arguments regarding each of the defenses.

Regarding the parental immunity doctrine, Missy presents two arguments. She relies on *Bonin*, 261 Kan. at 237-38, in which this court recognized the defense's availability in exceptional circumstances where the exercise of parental discretion or authority was involved, such as in a parent's failure to investigate or pursue a medical malpractice action. But Missy does not explain how that exception applies here. Second, she suggests the defense should be available where the child is deceased and the plaintiff seeks damages on behalf of the child's heirs. Other courts have rejected this argument, and Missy fails to argue why the reasoning of these courts should be rejected. See, *e.g.*, *Clark v. Sears, Roebuck & Co.*, 731 S.W.2d 469, 473 (Mo. App. 1987) (finding where "parent brings an action in her own name for the wrongful death of her infant, the negligence of the parent that contributes to the casualty which produced the death can be assessed against the parent"); *Helton v. Reynolds*, 640 S.W.2d 5, 11 n.2 (Tenn. App. 1982) (stating "the parents being next of kin are the beneficiaries of the proceeds of any

recovery and, consequently, a defense may unquestionably be based upon their negligence"); *Cole v. Fairchild*, 198 W. Va. 736, Syl. ¶ 7, 482 S.E.2d 913 (1996) ("The parental immunity doctrine does not prohibit the negligence of a parent from being asserted as a defense in an action brought by the parent for the wrongful death of a child."); but see *Campbell v. Callow*, 876 S.W.2d 25, 27 (Mo. App. 1994) (wrongful death claim; deceased minor's death took place before Missouri abrogated the parental immunity doctrine; therefore, action barred by the doctrine).

As to the spousal immunity doctrine, she seeks to impose a rule that would make it impossible for an heir at law who was married to a tortfeasor to bring a wrongful death action. Such a rule would be in conflict with K.S.A. 60-1902, which provides that a wrongful death action "may be commenced by any one of the heirs at law of the deceased who has sustained a loss by reason of the death." She fails to present a persuasive reason why a common-law rule should prevail over this statutory language.

Thus, under the facts of this case and, more particularly given the limited arguments presented, neither parental nor interspousal immunity doctrines are available as a defense.

We reverse the Court of Appeals decision and the district court's judgment and remand to the district court for proceedings consistent with this opinion.

Reversed and remanded.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 105,698 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.