NOT DESIGNATED FOR PUBLICATION

No. 114,937

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MARILYN K. PARSONS,
*Appellee*,

v.

JON M. KING,
*Appellee*,

and

THE TRUST COMPANY OF KANSAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; DAVID J. KING, judge. Opinion filed March 17, 2017.
Reversed and remanded with directions.

*Darrell L. Warta* and *Rachel N. Wetta*, of Foulston Siefkin LLP, of Wichita, for appellant.

*Michael Crow*, *Peter C. Robertson*, and *Dan Heinz*, of Crow & Associates, of Leavenworth, for
appellee Marilyn Kay Parsons.

Before LEBEN, P.J., POWELL and SCHROEDER, JJ.

*Per Curiam*: The Trust Company of Kansas (TCK) appeals the jury verdict
finding it negligently failed to train Jon M. King as one of its employees. TCK claims:
(1) there was insufficient evidence to support the verdict; (2) the district court should
have granted its motion for judgment as a matter of law; and (3) the jury was improperly
instructed by the district court on TCK's failure to train King. Marilyn K. Parsons does

1

not cross-appeal. We find the evidence was insufficient to support the jury verdict for negligent failure to train. Thus, the district court should have granted TCK's posttrial motion for judgment as a matter of law. With this ruling, we decline to answer the other questions raised by TCK on appeal. Reversed and remanded with directions.

TCK is a Kansas corporation offering trust and financial management services. In 2004, TCK hired King, a licensed Kansas attorney, as a trust officer to perform trust-related financial management services for its clients. Prior to his employment with TCK, King served as a trust officer for multiple banks and was an attorney in private practice. When he was hired, King was given a brief orientation by TCK's president, Martha Linser. King's orientation primarily consisted of training on TCK's software and computer systems, opening client accounts, client prospecting, and attending committee meetings. As King's supervisor, Linser was responsible for training King. Linser's training included annual sales goals and how to record client contacts and gather facts on prospective clients. She also trained King on TCK's guidelines for client contact based on the size of a client's account.

After orientation, Linser became King's direct supervisor. King was named vice president and began working at TCK's Lawrence office. Shortly thereafter, King requested TCK's policy manual from Linser as well as TCK's overdraft policy. Linser told King he could locate TCK's policy manual on the company's intranet. King testified he was unable to access it because TCK's intranet system did not work in the Lawrence office.

Prior to working for TCK, King had an attorney-client relationship with Parsons. With King's guidance, Parsons became a TCK client. Their attorney-client relationship continued throughout King's employment at TCK. TCK has an internal policy prohibiting attorneys hired as trust officers from engaging in the private practice of law while employed at TCK. The policy is designed to ensure TCK receives the full-time best

2

efforts of its employees. King was aware of the policy but believed it only applied during work hours. King testified that in his previous employment as a bank trust officer, he maintained a private law practice. TCK was unaware King continued his attorney-client relationship with Parsons by providing her legal services for a fee.

King told Parsons the services he was providing as an attorney were separate and distinct from those he was providing as a trust officer with TCK. King also testified Parsons required a lot of his time and TCK was not compensating him for it. As a result, he started charging Parsons $5,000 per month in attorney fees. In total, Parsons paid King more than $250,000 in attorney fees during his employment at TCK.

From October 2005 through July 2011, King requested various withdrawals from Parsons' TCK trust account to be deposited in her checking account at a bank in Leavenworth. These requests were generally accompanied with minimal or no explanation for their purpose though TCK had a policy to record the purpose of the withdrawal if the trust officer was aware so TCK could later refresh the client's memory if concerns arose. However, TCK left it to the discretion of the trust officer to determine what needed to be documented. King's requests for withdrawals were sent to TCK's trust investment committee (TIC) for approval. After they were approved by the TIC, the withdrawals were made by TCK's central office. The TIC did not contact Parsons to inquire as to the purpose of the withdrawals.

King resigned from TCK in July 2011. When another TCK trust officer was helping King clean out his office on the day he resigned, TCK became aware of King's attorney-client relationship with Parsons. King continued his attorney-client relationship with Parsons after leaving TCK, and Parsons' trust account remained with TCK. TCK took no action when it learned of King's attorney-client relationship with Parsons. A few months later, Parsons complained to her new trust officer that King was accessing her personal checking account and transferring money to himself. TCK reviewed her

checking account records and identified payments made to King. After learning the details of King's relationship with Parsons, TCK filed a complaint of suspected elder abuse with the Kansas Department of Social and Rehabilitation Services and an ethical complaint with the Kansas Disciplinary Administrator's Office. As a result, King voluntarily surrendered his license to practice law. See *In re King*, 297 Kan. 208, 300 P.3d 643 (2013).

In August 2013, Parsons filed a lawsuit against TCK, alleging breach of fiduciary duty, breach of contract, and negligent misrepresentation. Parsons also asserted separate causes of action against King. In Parsons' second amended petition, Parsons asserted breach of contract, breach of fiduciary duty, negligent misrepresentation, respondeat superior, and negligent supervision as her claims against TCK.

Parsons filed her pretrial questionnaire, first amended pretrial questionnaire, and second amended pretrial questionnaire, basically all asserting claims for breach of fiduciary duty, breach of contract, negligent misrepresentation, and negligent supervision. Parsons also asserted a claim of respondeat superior in her pretrial questionnaire and first amended pretrial questionnaire. Parsons dismissed the claim of respondeat superior in her second amended pretrial questionnaire. Parsons did not present a claim against TCK for negligent failure to train in any of her pretrial questionnaires.

The district court's pretrial order reflected: "Plaintiff asserts claims against the Trust Company of Kansas for (1) breach of contract, (2) breach of fiduciary duty, and (3) failure to properly supervise its employee, Jon King." Parsons later moved to amend the pretrial order, but she did not assert a claim of negligent failure to train. At trial, Parsons offered expert testimony from Robert Kirkland, an attorney specializing in trusts and estates. Kirkland testified TCK should have investigated King's requests for withdrawals in excess of $5,000, as it was common industry practice to do so. Kirkland also testified

4

trust companies typically provide their trust officers with more training than TCK did but did not state whether doing so would have prevented Parsons' financial loss.

Prior to the close of Parsons' case in chief, the district court indicated the parties' proposed jury instructions were unsatisfactory and it had therefore spent considerable time trying to prepare appropriate jury instructions. At the close of Parsons' case in chief, TCK moved for judgment as a matter of law on all of Parsons' claims; however, the parties reserved argument until the close of all evidence. After hearing argument from the parties, the district court granted TCK's motion for judgment as a matter of law on part of Parsons' breach of contract claim. The district court summarized Parsons' remaining claims as "breach of contract, breach of fiduciary duty, negligent [mis]representation, and negligent supervision."

The district court then finalized its jury instructions and verdict form. At the jury instruction conference, the district court discussed its proposed instructions with the parties. The district court split Parsons' negligent supervision claim into a claim of negligent supervision and negligent training. The relevant instructions read:

"Instruction No. 18
  "***Negligent supervision and training claim against Trust Company of Kansas.***
  "The plaintiff, Marilyn Kay Parsons, claims the defendant, Trust Company of Kansas, failed to adequately supervise and train Jon M. King by the following:
    "(1) Failing to train and orient Jon M. King that he was prohibited from practicing law for TCK clients while employed by TCK
    "(2) Failing to provide training regarding TCK company policies
    "(3) Failing to provide training regarding fiduciary duties to TCK clients
    "(4) Failing to verify that Jon M. King did not engage in the private practice of law while employed by TCK
  "The plaintiff must prove her claim for negligent supervision and training by a preponderance of the evidence.

5

"In response to this claim, the defendant, Trust Company of Kansas, denies that it failed to adequately supervise and train Jon M. King. It maintains that plaintiff's losses are not attributable to any failure of training and supervision on its part, but rather to the intentional wrongful acts of Jon M. King, of which it was not aware."

"Instruction No. 25

### "*Negligent Supervision and Training*

"In considering the plaintiff's claim against Trust Company of Kansas for negligent supervision and training, you should consider the following:

"1.    An employer has a duty to supervise an employee it knows, or has reason to know, is unfit to undertake the responsibilities of his or her employment.

"2.    Negligent supervision entails either inadequate oversight and review of an employee in the performance of his or her job duties or failing to control an employee with propensities that might pose a danger.

"3.    A claim based on negligent training depends upon establishing facts showing that more or better training would have prevented the harm.

"The plaintiff must prove her claim for negligent supervision and training by a preponderance of the evidence."

These instructions were given to the jury without objection. The district court's verdict form listed negligent failure to train as a separate cause of action from negligent failure to supervise. Both parties expressed some concerns over the proposed instructions. Parsons' attorney seemed surprised, stating: "Then, ahh, on 11 [on the verdict form], a little bit of concern about fail to train. I thought it was fail to supervise." TCK's counsel did not explicitly object to the instructions or verdict form; rather, he expressed a concern the instruction gave Parsons "basically two bites on—on supervision." The district court explained its reasoning for separating Parsons' claim into negligent training and negligent supervision—different legal standard for the claims. The district court specifically asked whether TCK objected. TCK's counsel responded, "I simply—I wanted the verdict form to track the—the Jury Instruction, but I understand your reasoning. That's fine. I just—I didn't know that that's the reason you did it. Okay."

6

The case was submitted to the jury by the district court with five claims against TCK:

(1)     Breach of contract;

(2)     Breach of fiduciary duty;

(3)     Negligent misrepresentation;

(4)     Negligent failure to supervise King; and

(5)     Negligent failure to train King.

The jury also considered six separate claims against King. The jury found in Parsons' favor that TCK negligently failed to train King. The jury also found in Parsons' favor on her claim for breach of fiduciary duty against King. The jury awarded damages of $125,135.75 plus interest of $6,055.99 jointly and severally against King and TCK. The jury returned a defendant's verdict on the remainder of Parsons' claims against TCK.

TCK timely filed a renewed motion for judgment as a matter of law, or alternatively, a new trial. The district court denied the motion and filed the journal entry of denial. TCK timely appealed. King did not appeal the jury's finding against him for breach of fiduciary duty, and Parsons did not cross-appeal.

A trial court's decision on a motion for judgment as a matter of law is reviewed de novo, determining "whether evidence existed from which a reasonable jury 'could properly find a verdict for the nonmoving party.' [Citation omitted.]" *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

> "[W]hen considering a motion for judgment as a matter of law we ""resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought,"" and, ""[w]here reasonable minds could reach different conclusions based on the evidence, the motion must be denied.'" [Citations omitted.]' [Citations omitted.]" *Siruta*, 301 Kan. at 766.

7

See *City of Neodesha v. BP Corporation*, 295 Kan. 298, 319, 287 P.3d 214 (2012).

TCK argues it was entitled to judgment as a matter of law on Parsons' claim of negligent failure to train. Specifically, TCK argues Parsons failed to present evidence to support her claim. TCK is correct; Parsons' evidence was insufficient. The evidence did not establish more or better training would have prevented her injuries; rather, it focused on whether TCK adequately supervised King. Accordingly, Parsons' claim of negligent failure to train fails on the merits. See *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 283, 261 P.3d 943 (2011) ("A claim based on negligent training depends upon establishing facts showing that more or better training would have prevented the harm.").

Here, the record reflects the following statements by King:

> "I was not aware of that . . . I did have access to the Intranet that had those— evidently those policy and procedure manuals on them. However, I did not take the time to read them. *Had I done that, obviously, I'd be in a very different situation at the moment.*" (Emphasis added.)

However, King went on to say: "Had the policies and procedures been available to us in hard copy, however, I don't know that I still would have looked at them . . . I did sign a document that said I had received them, but I had not read them."

This evidence is insufficient to support Parsons' judgment even when considering all the facts and inferences that may reasonably be drawn from the evidence in her favor. Parsons had the burden to show TCK failed to properly train King and that more or better training of King would have prevented the loss. Parsons failed to present this evidence.

When the trial record lacks sufficient evidence to support the judgment, the moving party is entitled to judgment as a matter of law. See *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 52, 169 P.3d 1052 (2007) (matter remanded with order to enter

judgment in favor of defendant where district court erroneously denied defendant's motion for judgment as a matter of law); *Estate of Belden*, 46 Kan. App. 2d at 284, 286 (summary judgment is appropriate on a claim of negligent failure to train where the plaintiff fails to establish more or better training would have prevented the harm).

We reverse and remand for the district court to enter a journal entry finding TCK is entitled to judgment as a matter of law. Given this ruling, we deem it unnecessary to address TCK's other claim the district court erred in submitting to the jury the instruction on negligent failure to train King.

Reversed and remanded with directions.